Kerry L. PUTNAM, Carol L. Smith-Carter and Louis Boutan, individually and on behalf of all others similarly situated, Plaintiffs-Appellants-Petitioners,

v.

TIME WARNER CABLE OF SOUTHEASTERN WISCONSIN, LIMITED PARTNERSHIP, Defendant-Respondent.

Supreme Court

*No. 99–2078. Oral argument February 4, 2002.—Decided July 16, 2002.*

2002 WI 108

(Also reported in 649 N.W.2d 626.)

For the plaintiffs-appellants-petitioners there were briefs by *John C. Cabaniss* and *Law Office of John C. Cabaniss,* Milwaukee, and *John J. Carey* and *Carey & Danis, LLC,* St. Louis, Missouri, and oral argument by *John C. Cabaniss.*

For the defendant-respondent there was a brief by *Robert H. Friebert, Jeremy P. Levinson* and *Friebert, Finerty & St. John, S.C.,* Milwaukee, and oral argument by *Robert H. Friebert.*

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals,[1] which affirmed an order of the Milwaukee County Circuit Court, Lee E. Wells, Judge, dismissing with prejudice an action brought by a putative class of cable television customers against Time Warner Cable of Southeastern Wisconsin, Limited Partnership (Time Warner).

¶ 2. Two issues are presented for review. First, does the voluntary payment doctrine preclude cable television customers from recovering the portion of monthly late-payment fees that they claim constitutes unlawful liquidated damages if the customers paid the fees without expressing any objection or protest? Second, did the circuit court erroneously exercise its dis-

---

[1] *Putnam v. Time Warner Cable of SE Wis.,* 2001 WI App 196, 247 Wis. 2d 41, 633 N.W.2d 254.

cretion when it concluded that the customers' request for a declaration of rights and injunctive relief to prevent Time Warner from imposing such late-payment fees in the future was not justiciable because the customers failed to allege a present harm?

¶ 3. We hold that the voluntary payment doctrine bars cable customers from recovering monetary damages for their payment of allegedly unlawful fees without objection or protest, if the customers do not properly allege mistake of fact on their part or fraud or duress on the part of the cable company. We also conclude, however, that the circuit court misapplied the law with respect to justiciability requirements for declaratory judgments. Therefore, the customers' claims for declaratory relief should be permitted to go forward.

## I. BACKGROUND

¶ 4. The issues in this case stem from Time Warner's imposition of a $5.00 late-payment fee on cable customers who fail to pay their monthly cable bill by the time specified in their contract. Three of these customers, Kerry L. Putnam, Carol L. Smith-Carter, and Louis Boutan, individually and on behalf of a putative class of similarly situated customers (the customers or plaintiffs), brought an action to recover monetary damages for that portion of the fee which, they claim, is not reasonably related to Time Warner's actual costs incurred as a result of late payments.[2] The

---

[2] The amended complaint stated the following theories of relief: (1) unlawful liquidated damages; (2) unconscionability; (3) breach of implied covenants of good faith and fair dealing; (4) unjust enrichment; (5) restitution; (6) money had and received; (7) violation of Wisconsin's Trade Practices Act; (8) equitable accounting; and (9) declaratory and injunctive relief.

customers also sought declaratory and injunctive relief to prevent Time Warner from imposing such fees in the future.

¶ 5. The customers' amended complaint contained numerous allegations against Time Warner. The complaint alleged that customers are required, upon "installation and/or other activation of cable television programming," to execute an adhesion contract, unilaterally constructed by "Time Warner, a licensed monopoly." It asserted that this contract expressly requires customers to prepay for the first month of cable service, and Time Warner thereafter imposes a $5.00 late fee on customers who subsequently fail to pay their cable bills by the monthly due date.[3] The complaint further alleged that Time Warner's late fee "does not, in fact, bear a reasonable relationship to the costs incurred by Time Warner solely as a result of the late payments and/or late paying customers," nor is it a reasonable estimate of that cost. It asserted that the actual cost facing Time Warner for a single late payment is between $0.38 and $0.48. The complaint also alleged that Time Warner's collection of late fees constitutes a double recovery because Time Warner has already incorporated non-payment collection costs into its basic cable rates, which have been approved by the Federal Communications Commission. The complaint alleged that Time Warner "omitted, and continues to omit, conceal, and misrepre-

---

[3] The complaint alleged that this payment system represents a deliberate profit-making scheme by Time Warner. According to the complaint, "Time Warner consciously designed its billing cycle and due dates to uniformly and systematically 'catch' a consistent percentage of its customer base paying late. In this manner, Time Warner guarantees that late fees will provide a consistent and substantial source of revenue."

454

sent the unreasonable basis for the late fee and its true nature as a penalty for late payment," and does so fraudulently.

¶ 6. Finally, the complaint alleged that the customers, "[i]n reliance on [Time Warner's] concealments, suppressions, and omissions . . . paid at least one excessive and unconscionable late fee to Time Warner" and that Time Warner customers paying late fees do so "under duress and the real and imminent threat that Time Warner, a monopolist for cable television programming . . . , would disconnect the cable television services of a late paying customer."

¶ 7. Time Warner moved to dismiss all the customers' claims on multiple grounds, among them that all the claims were precluded by the voluntary payment doctrine. In response, the customers asserted that the doctrine was inapplicable for two reasons. First, the customers did not possess knowledge of all the facts relevant to the late-fee charges because Time Warner deceptively concealed those facts. Second, the customers lacked a meaningful opportunity to contest the late fees. After hearing these arguments, the circuit court determined that the voluntary payment doctrine barred the customers' recovery of past late-fee payments in excess of Time Warner's actual costs. The court also concluded that the claim for declaratory and injunctive relief was not ripe for resolution because the amended complaint failed to allege that any customer had presently refused to pay a late fee. It therefore granted the motion to dismiss and denied the customers' petition for leave to further amend their complaint.

¶ 8. In affirming both conclusions, the court of appeals advanced multiple reasons why, "regardless of the truthfulness of the customers' assertions, the voluntary payment doctrine precluded their claims for

recovery of late-fee payments in excess of Time Warner's actual costs." *Putnam v. Time Warner Cable of SE Wis.*, 2001 WI App 196, ¶ 9, 247 Wis. 2d 41, 633 N.W.2d 254. First, the customers failed to allege that Time Warner had any duty to disclose the specific factors affecting the late fee amount, and Time Warner had no duty. *Id.* at ¶ 10. Second, the amended complaint did not allege that fraudulent actions by Time Warner materially affected the customers' decisions to pay the late fees. "If the customers never considered the propriety of the late fees before paying them, they certainly did not pay the fees as a result of any fraudulent misrepresentation or concealment." *Id.* at ¶ 11. Third, "at most, [the customers] paid [the late fees] . . . because of a mistake of law regarding whether Time Warner was legally entitled to charge the $5.00 late fee." *Id.* at ¶ 12. Fourth, the customers failed to establish that they paid the late fee as a result of fraud or mistake perpetrated by Time Warner. *Id.* at ¶ 13. Finally, the customers' claim that they were subject to Time Warner's threats of disconnecting cable service for not paying a late fee did not rise to the level of economic duress as a matter of law. *Id.* at ¶ 14.

¶ 9. The court of appeals also noted that, despite some legal differences between the customers' claim of unlawful liquidated damages and their other claims for monetary relief, the customers' unlawful liquidated damages claim was also properly dismissed based on their voluntary payments. *Id.* at ¶¶ 15–21. Finally, as to the declaratory judgment action, the court deferred to the circuit court's decision that the action was not ripe for judicial review and declaratory relief. *Id.* at ¶ 27.

¶ 10. On appeal to this court, the customers present two arguments. They maintain that the circuit

court erred in applying the voluntary payment doctrine in this case to claims based on unlawful liquidated damages. They also contend that the circuit court erred in disallowing their claims for declaratory and injunctive relief.

¶ 11. Because this dispute involves a motion to dismiss based on the legal insufficiency of the complaint, the circuit court was required to assume the truth of all *factual* allegations in the complaint. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999). In analyzing this case, we likewise take as true all allegations made in the customers' amended complaint and draw all reasonable inferences in favor of the customers. Upon a motion to dismiss, "Unless it seems certain that no relief could be granted under any set of facts that the plaintiff could prove, dismissal of the complaint is improper." *Id.*

## II. ANALYSIS

A. Voluntary Payment Doctrine

¶ 12. We first address whether the voluntary payment doctrine bars customers of Time Warner from recovering damages for an unlawful liquidated damages claim.

¶ 13. The voluntary payment doctrine places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment. *See* 66 Am. Jur. 2d *Restitution and Implied Contracts* § 108 (2001) ("The rule is well settled that a person cannot recover

money that he or she has voluntarily paid with full knowledge of all of the facts and without fraud, duress, or extortion in some form, and that no action will lie to recover the voluntary payment."); *Restatement (First) of Restitution* § 112 (1937). The basic description of the doctrine, as employed by the court of appeals, is not in dispute.

> The voluntary payment doctrine provides that "as between [person] and [person], money paid voluntarily, with knowledge of all the facts, and without fraud or duress, cannot be recovered merely on account of ignorance or mistake of the law." *Frederick v. Douglas County,* 96 Wis. 411, 423, 71 N.W. 798 (1897). The doctrine has been applied in several diverse contexts to preclude actions to recover payments that parties paid voluntarily, with full knowledge of the material facts, and absent fraud or wrongful conduct inducing payment.

*Putnam,* 2001 WI App 196, ¶ 8. The voluntary payment doctrine is often considered the counterpart to the mistake of law doctrine, and jurisdictions that reject one of the doctrines almost universally reject the other. *See Randazzo v. Harris Bank Palatine, N.A.,* 262 F.3d 663, 667–68 (7th Cir. 2001) (citing Stephen L. Camp, Note, *The Voluntary-Payment Doctrine in Georgia,* 16 Ga. L. Rev. 893 (1982)). Wisconsin has adopted the mistake of law doctrine.[4]

---

[4] The mistake of law doctrine states that every person is presumed to know the law and cannot claim ignorance of the law as a defense. *See Hurd v. Hall,* 12 Wis. 125, 137–38 (1860); *see also Black's Law Dictionary* 1017 (7th ed. 1999) (defining a mistake of law as a "mistake about the legal effect of known fact or situation"); *Restatement of Restitution* § 7 ("a 'mistake of law' means a mistake as to the legal consequences of an assumed set of facts"). Long ago this court declared that "A mistake of law

¶ 14. In Wisconsin, the voluntary payment doctrine developed as a common law principle and has been applied in various contexts. Since the late 1800s, it has been applied to bar repayment of a judgment erroneously paid to an attorney, *Gage v. Allen,* 89 Wis. 98, 61 N.W. 361 (1894); to bar repayment of interest overpaid on a loan, *Burgess v. Commercial National Bank,* 144 Wis. 59, 128 N.W. 436 (1910); and to bar repayment of taxes paid on property that was tax-exempt, *G. Heileman Brewing Co. v. City of La Crosse,* 105 Wis. 2d 152, 312 N.W.2d 875 (Ct. App. 1981).

¶ 15. The "voluntary" in the voluntary payment doctrine does not entail the mere payment of the bill or fee. For example, some customers might not pay their cable television bills if their cable provider did not

happens when a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion or inference, arising from an imperfect or incorrect exercise of the judgment, upon facts as they really are . . . ." *Hurd,* 12 Wis. at 138. Wisconsin has recognized that a mistake of law generally precludes relief, but the doctrine is not without limitation. *See Heinemann v. Rosier,* 240 Wis. 19, 31, 1 N.W.2d 803 (1942) ("The general rule is that courts of equity will not grant relief from a mistake of law."); *Plumbers Woodwork Co. v. Merchants Credit & Adjustment Bureau,* 199 Wis. 466, 472, 226 N.W. 303 (1929) ("It is a general principle that equity will not relieve from mistakes of law. It is true that to this general principle there are certain exceptions, but such exceptions are very limited."); *Conway v. Town of Grand Chute,* 162 Wis. 172, 174, 155 N.W. 953 (1916) ("It is correct as a general proposition to say that relief will not be granted against a mistake of law."). This court applied the mistake of law doctrine in a case where the voluntary payment doctrine was used to deny repayment of monies previously paid. *See Gage v. Allen,* 89 Wis. 98, 106, 61 N.W. 361 (1894).

459

threaten termination of service due to non-payment. In this sense, payment of any bill or fee is not "voluntary." Rather, the voluntariness in the doctrine goes to the willingness of a person to pay a bill *without protest as to its correctness or legality.*

¶ 16. There are two primary reasons why courts have adopted the voluntary payment doctrine. First, the doctrine allows entities that receive payment for services to rely upon these funds and to use them unfettered in future activities. *See Heileman,* 105 Wis. 2d at 161–62. Second, the doctrine operates as a means to settle disputes without litigation by requiring the party contesting the payment to notify the payee of its concerns. After such notification, a payee who has acted wrongfully can react to rectify the situation. *Cf. Flambeau Prods. Corp. v. Honeywell Info. Sys.,* 116 Wis. 2d 95, 101, 341 N.W.2d 655 (1984) (noting that the common law rule of accord and satisfaction, which allows for the discharge of a debt by substituted performance, "provides a method of settling disputes without litigation").

¶ 17. The plaintiffs in this case do not directly attack the soundness of the voluntary payment doctrine. Rather, they dispute whether it applies to the circumstances of this case. In other words, they challenge whether a person who pays a late-payment fee without protest and who *thereafter* alleges the fee was based on unlawful liquidated damages, is barred from making a claim for recovery because of the initial voluntary payment. We believe such claims are properly barred.

¶ 18. We substantially agree with the court of appeals' analysis regarding the applicability of the voluntary payment doctrine to the customers' claims for

repayment. The thrust of the customers' allegations is two-fold. First, the customers allege that they paid the $5.00 late fee without knowing that Time Warner's actual costs from a late payment were only $0.38 to $0.48. Second, they maintain that Time Warner concealed material information regarding its late-payment costs.[5] Even assuming these allegations are true, neither allegation falls within the exceptions to the voluntary payment doctrine. The customers appear to be synthesizing the two allegations, one sounding in fraud and the other in mistake of fact, with the hope that the whole of the summated argument will be greater than its individual parts.

¶ 19. The customers' contention that they lacked full information goes to a mistake of law on their part, not a mistake of material fact. The customers complain that they were mistaken in not realizing that the actual cost of late payment to Time Warner was only $0.38 to $0.48. However, the customers possessed full knowledge of the $5.00 late fee and of the circumstances under which they would be exposed to it. *See Dillon v. U-A Columbia Cablevision of Westchester,* 740 N.Y.S.2d 396, 398 (N.Y App. Div. 2002) (using knowledge of these facts as a basis for denying recovery of unlawful late-payment fees by cable customers, under the voluntary payment doctrine). Although they failed to exercise any diligence to inquire into or contest the cost-accounting basis of Time Warner's late-payment fee, the customers now assert that Time Warner impermissibly concealed and omitted information related to the basis of the fee

---

[5] Although the customers argued a duress theory in the court of appeals, they abandoned that argument before this court.

amount. This assertion conflates the issue of mistake of fact with the customers' allegations of fraud.[6]

¶ 20. The customers' allegations of fraud are to no avail. The amended complaint does no more than assert nebulous wrongdoing on the part of Time Warner; it does not allege fraud with the particularity required under Wisconsin's pleading requirements. Wis. Stat. § 802.03 (1999–2000).[7] As the court of appeals correctly noted, the customers failed to argue that Time Warner had a duty to reveal this cost-accounting information, an element necessary to establish fraud by omission. *See Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 26, 288 N.W.2d 95 (1980) (citing *Restatement (Second) of Torts,* § 551, cmt. b (1977)). In all, the customers' failure to know the precise factors underlying Time Warner's decision to charge a $5.00 late fee cannot be held to be a mistake of fact as to the basis for the payment made, nor is it the product of fraud by omission. To conclude otherwise would tacitly suggest that all demands for payment in business transactions would need to be accompanied by an itemized list explaining the basis for each charge, so that the payor had full knowledge of the facts as required by the voluntary payment doctrine.

¶ 21. Because the customers have failed to show fraud or mistake of fact, we inquire into whether there is something distinctive about the facts and allegations in their case that would warrant not applying the general rule that voluntary payment precludes subse-

---

[6] Mistake of fact goes to the "unconscious ignorance or forgetfulness of . . . a fact . . . material to the contract." *Kowalke v. Milwaukee Elec. Ry. & Light Co.,* 103 Wis. 472, 476, 79 N.W. 762 (1899) (quotation omitted).

[7] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

quent legal redress. The customers claim unlawful liquidated damages and argue that because Time Warner demanded unlawful liquidated damages[8] the voluntary payment doctrine is inapplicable. They assert that both the unlawful liquidated damages doctrine and the voluntary payment doctrine are equitable in nature but that the circuit court and court of appeals failed to take into account Time Warner's wrongful conduct before invoking the voluntary payment doctrine.

¶ 22. In essence, the customers argue for the creation of an additional exception to the voluntary payment doctrine. A broad reading of this exception would be that when a private entity engages in wrongful conduct, the entity may not avail itself of the voluntary payment doctrine to block claims derived from the wrongful conduct. A narrow reading of the exception would limit "wrongful conduct" to the use of unlawful liquidated damages clauses.

██

¶ 23. We decline to create a new exception to the voluntary payment doctrine based on either of the preceding theories. Instead, we conclude that the principles of public policy and equity that gave birth to the doctrine support its application in this case.

¶ 24. First, we compare an unlawful liquidated damages claim to the few claims of wrongdoing that are currently exceptions to the voluntary payment doctrine. Second, we address how the competing equitable

---

[8] The customers allege in their amended complaint that the late fee provision of the cable service contract represents "an illegal liquidated damages provision under common law and is void as a matter of public policy."

principles and public policy considerations of the voluntary payment doctrine reason for its application in this context.

■

¶ 25. A claim of unlawful liquidated damages is not sufficiently similar to claims of fraud or duress, or mistake of material fact, to join them as exceptions to the voluntary payment doctrine.

¶ 26. The differences between allegations of fraud and mistake of fact versus allegations of unlawful liquated damages are discernible in the manner in which each must be pled. Wisconsin Stat § 802.03(2) requires that allegations of fraud and mistake of fact be pled with particularity. For instance, allegations of fraud must specify the particular individuals involved, where and when misrepresentations occurred, and to whom misrepresentations were made. *See Friends of Kenwood v. Green,* 2000 WI App 217, ¶ 16, 239 Wis. 2d 78, 619 N.W.2d 271. This detailed pleading protects persons from casual allegations of serious wrongdoing and puts defendants on notice "so that they may prepare meaningful responses to the claim." *Rendler v. Markos,* 154 Wis. 2d 420, 428, 453 N.W.2d 202 (Ct. App. 1990). We agree with the court of appeals in this case that the amended complaint fails to state with particularity the circumstances constituting fraud or mistake of fact. The fact that particularity is not required in pleading an unlawful liquidated damages claim counsels against allowing it as an exception to the voluntary payment doctrine.

■

¶ 27. Fraud consists of a purposeful, volitional act on the part of the defrauding party. *See Black's Law Dictionary* 670 (7th ed. 1999) (defining "fraud" as "1. A knowing misrepresentation of the truth or concealment

464

of a material fact . . . "). By contrast, not all invalid or wrongful conduct related to charging fees under a contract involves intentional or knowing violation of law. For instance, a party to an adhesion contract may insert an unlawful liquidated damages clause into the contract without any intent or knowledge of its illegality. In fact, as explained in *Wassenaar v. Panos,* 111 Wis. 2d 518, 524–25, 331 N.W.2d 357 (1983), the test for whether a stipulated liquidated damages clause is valid is ultimately a question of reasonableness, a legal question that is heavily influenced by all the facts and circumstances of the particular case. While a mistake of law does not shield the party authoring such a clause from legal challenge, it does not represent the type of wrongful action that should be excepted from the voluntary payment doctrine.

¶ 28. Duress is also significantly dissimilar to unlawful liquidated damages. Duress involves a patently wrongful act that is designed and undertaken to overcome the will of another. *See Wurtz v. Fleischman,* 97 Wis. 2d 100, 109–10, 293 N.W.2d 155 (1980) (discussing the meaning of economic duress). It overcomes the will of a payor through coercion or fear, which is different from the imposition of unlawful liquidated damages.

¶ 29. These differences under the law in the treatment of allegations of fraud, duress, and mistake of fact versus unlawful liquidated damages advise against them being treated as equals. Allegations of fraud, duress, and mistake each work to negate the true voluntariness of payments. The wrongdoing of unlawful liquidated damages may be technical in nature.

465

¶ 30. We believe that another rationale behind the doctrine is applicable to this case. We agree with the general principle that a person who receives payment from another without any protest from the payor should be allowed to rely on use of the funds without risking a subsequent demand for return of the payment. This principle applies with equal force when the payor is a cable television customer and the payee is that customer's cable provider.

¶ 31. In *Heileman,* the court of appeals articulated and applied this policy justification. Heileman brought suit against the City of La Crosse, La Crosse County, and the State of Wisconsin seeking return of money paid in prior years for taxes on property that the company later learned was tax-exempt. 105 Wis. 2d at 154–55. The court concluded that even though the previous tax assessments were void ab initio, the voluntary payment doctrine precluded return of the tax payments. *Id.* at 161–62. The court stated the reason for applying the voluntary payment doctrine to bar the plaintiff's claim:

> The requirement of resistance to or involuntary payment of a tax is one of public policy: government has an interest in allocating its resources. It is desirable that government know when it contemplates spending public funds that those funds are either available or subject to loss through tax refund. . . . The inequity of paying illegally collected taxes is outweighed by the requirement that government know what amount of income it has available.

*Id.*

¶ 32. Time Warner argues that the rationale expressed in *Heileman* applies equally to the present case. It contends that a failure to apply the doctrine in cases

466

in which a private entity is threatened with suit for repayment would be detrimental to the ability of businesses and other persons to reasonably rely upon and use money received. The customers respond that the equitable and policy reasons behind the voluntary payment doctrine do not apply to the circumstances of the present case. Specifically, they argue that the rationale behind the *Heileman* decision should not apply equally to non-governmental entities.

¶ 33. We believe that the rationale underpinning the *Heileman* decision is applicable to the fiscal interests of private entities. Private businesses such as Time Warner should be able to incorporate into their revenue stream payments made by their customers without dispute. All that a payor has to do to sidestep the voluntary payment doctrine is to make some form of protest over the fee prior to, or contemporaneous with, payment. When a payee has been given that notice, the funds received can be secured for future use until the dispute is settled.

¶ 34. We acknowledge that there are differences between funds received by a governmental body through taxation and revenue received by a private entity from business transactions.[9] However, for pur-

---

[9] In his separate opinion in this case, Judge Schudson asked:

> [D]oes the rationale of *Heileman* encompass private enterprise? Is it enough to say, as the majority declares, that "some of a government's fiscal concerns . . . are analogous to a private entity's fiscal concerns as well"?

> That's the tenuous pivot point in the majority's decision on the customers' unlawful-liquidated-damages claim. After all, it is undisputed that if the late fee (or a portion thereof) is unlawful, Time Warner never should have charged it. Why, then, should

poses of applying the voluntary payment doctrine, the principles are similar.[10] Both the public and private sectors should be able to rely on these resources. The voluntary payment doctrine provides stability and certainty once funds have been transferred without notice of dispute, thereby decreasing the transaction costs that would accrue if payments received long ago could be demanded back. As the court of appeals noted, "[r]egularly receiving those late-fee payments, Time Warner continued its operations, projecting its profits and costs accordingly." *Putnam,* 2001 WI App 196, ¶ 20. Abandoning the voluntary payment doctrine here would open the door for a wide array of challenges to past payments in the name of protecting persons who were tardy in inquiring into and contesting demands for payment. The equities of cable customers who fail to make timely protests against allegedly unlawful late-payment fees must be weighed against the fiscal interests of cable providers in the certainty of payments received without dispute. We find this balancing favors the latter interest and the preservation of the voluntary payment doctrine in this context.

> Time Warner be allowed to take financial advantage of its own wrongdoing? If the *Heileman* rationale applies, the answer is clear, and Time Warner is in the clear. If, however, the *Heileman* rationale (explaining why government is insulated against such a claim) does not apply to a private enterprise that, in our free-market economy, perhaps should be expected to suffer the consequences of its wrongdoing, then the customers' claim survives, notwithstanding the voluntary payment doctrine.

*Putnam,* 2001 WI App 196, ¶¶ 36–37 (Schudson, J., concurring in part, dissenting in part) (citations omitted).

[10] In addition, we note that the voluntary payment doctrine is not new to private actions. *See Gage v. Allen,* 89 Wis. 98, 61 N.W. 361 (1894); *Burgess v. Commercial Nat'l Bank,* 144 Wis. 59, 128 N.W. 436 (1910).

¶ 35. Adoption of the customers' argument would effectively destroy the voluntary payment doctrine. The doctrine presupposes mistaken or wrongful conduct by the payee. To allow someone who made voluntary payment without objection to claim restitution, based only on an allegation that some wrongful conduct by the payee caused the payment of a fee, would nullify the doctrine in Wisconsin. We conclude that the merit of a claim and the underlying wrongdoing of the defendant do not undercut the applicability of the doctrine, absent fraud, duress, or mistake of fact. The legislature has the power to create additional exceptions to the voluntary payment doctrine in particular circumstances.

¶ 36. In sum, the voluntary payment doctrine bars recovery of bills or fees previously paid without protest, absent properly pled allegations of fraud, duress, or mistake of fact.[11] None of these exceptions was properly alleged against Time Warner in this action regarding its late-payment fees. Therefore, the customers' current claims for repayment are precluded by their previous failure to object to the late-payment fees prior to or contemporaneous with payment. Any claims for monetary relief of these payments deriving from an

---

[11] This holding is consistent with a number of nearly identical cases from other jurisdictions in which recovery of late fee payments to cable providers was barred by the voluntary payment doctrine. *See, e.g., Horne v. Time Warner Operations,* 119 F.Supp. 2d 624 (S.D. Miss. 1999); *Hassen v. MediaOne,* 751 So. 2d 1289 (Fla. Dist. Ct. App. 2000); *Telescripps Cable Co. v. Welsh,* 542 S.E.2d 640 (Ga. Ct. App. 2000); *Time Warner Entm't Co. v. Whiteman,* 741 N.E.2d 1265 (Ind. Ct. App. 2001); *Dillon v. U-A Columbia Cablevision of Westchester,* 740 N.Y.S.2d 396 (N.Y App. Div. 2002); *McWethy v. Telecomms. Inc.,* 988 P.2d 356 (Okla. Civ. App. 1999).

unlawful liquidated damages claim were correctly dismissed by the circuit court.[12]

## B. Declaratory Relief

¶ 37. We now address whether the circuit court properly denied the customers' claim for declaratory relief to prevent Time Warner from imposing late-payment fees in the future.

¶ 38. In the amended complaint, the customers asserted a claim for "Declaratory Injunctive and Equitable Relief" involving a series of requests for court orders, regarding the propriety of Time Warner's late-payment fees.[13] The customers argue that declaratory

---

[12] Each of the claims for relief stated in the amended complaint is premised on a theory of liability that Time Warner imposed an unlawful liquidated damages clause through the insertion of the $5.00 late-payment fee in its service contracts with cable subscribers. Each count alleges, in some manner, that Time Warner received payments from the late fees "which are not reasonably related to its actual costs." We conclude that because the customers are precluded under . the voluntary payment doctrine from seeking repayment of allegedly unlawful liquidated damages, the additional claims, with the exception of claims for declaratory relief, are encapsulated in the overall theory and are properly subject to the voluntary payment doctrine.

[13] The complaint asked for:

(a) [A] court determination of the rights of Plaintiffs and the Class and the corresponding rights of Time Warner concerning the imposition of late fees;

(b) [A] court declaration that Time Warner has unlawfully imposed excessive late fees on Plaintiffs and the Class Members;

(c) An order enjoining Time Warner from continuing to impose late fees that are not related to its reasonable costs;

relief is necessary because they and others will invariably be subject to Time Warner's late fees in the future. They argue that as long as Time Warner is permitted to charge these unlawful fees, customers face a Hobson's choice of paying the excessive late fees or having their cable service terminated. They therefore maintain that the dispute is justiciable and a declaration that the late fee is illegal is appropriate.

¶ 39. Time Warner counters that the controversy is not ripe for judicial determination. It argues that imposition of a late fee is contingent upon these customers making payments late and on Time Warner demanding payments of the late fee from these customers. Time Warner characterizes the customers' claims as uncertain because neither of these occurrences will necessarily transpire. Therefore, it argues, the circuit court properly exercised its discretion in denying declaratory relief.

¶ 40. The circuit court heard argument supporting and opposing Time Warner's motion to dismiss, but it decided to deny declaratory relief without an eviden-

(d) An order requiring Time Warner to conduct appropriate and necessary studies to determine the actual or reasonably anticipated damages that Time Warner might incur solely as a result of late payments and/or late paying customers;

(e) An order requiring Time Warner to disclose to its customers all information and facts discovered under the studies mentioned above;

(f) An order requiring Time Warner to send a notice to all of its customers concerning the terms and conditions under which any late fee or penalty will be assessed in the future; and

(g) A court order requiring Time Warner to refund to Plaintiffs and the Class Members all excessive late fees paid to Time Warner.

tiary hearing. We recently articulated the standard by which appellate courts review a circuit court's decision whether to permit or deny declaratory relief:

> A decision to grant or deny declaratory relief falls within the discretion of the circuit court. The circuit court's decision to grant [or deny] declaratory relief will not be overturned unless the circuit court erroneously exercised its discretion. This court will uphold a discretionary act if the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."

*Milwaukee Dist. Council 48 v. Milwaukee County*, 2001 WI 65, ¶ 36, 244 Wis. 2d 333, 627 N.W.2d 866 (citations omitted).

■

¶ 41. The leading Wisconsin case on declaratory judgments is *Loy v. Bunderson*, 107 Wis. 2d 400, 320 N.W.2d 175 (1982). *Loy* emphasized that a declaratory judgment is fitting when a controversy is justiciable. *Id.* at 410. A controversy is justiciable when the following factors are present:

> (1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.
>
> (2) The controversy must be between persons whose interests are adverse.
>
> (3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.
>
> (4) The issue involved in the controversy must be ripe for judicial determination.

*Id.* "If all four factors are satisfied, the controversy is 'justiciable,' and it is proper for a court to entertain an

action for declaratory judgment." *Miller Brands-Milwaukee v. Case,* 162 Wis. 2d 684, 694, 470 N.W.2d 290 (1991).

¶ 42. Looking at the record, the circuit court's discussion of the declaratory relief claim was very brief. The court did not question that a bona fide controversy existed between adverse parties over a legally protectible interest in the validity of contractual terms. In effect, it relied on the customers' failure to allege that they were suffering a present harm. The court observed that none of the customers was currently faced with paying a $5.00 late fee ("no one asserted that I have a late bill fee[,] that I have not paid it and I don't intend to pay it"). Therefore, the court concluded, this issue was not "ripe enough," failing the fourth factor of the justiciability standard. The court of appeals agreed with this conclusion, adding that "the customers' amended complaint asks this court to construe their rights 'in anticipation of an event that may never happen'—their failure to pay the cable bills on time and Time Warner's imposition of the five-dollar late fee." *Putnam,* 2001 WI App. at ¶ 25 (citations omitted).

¶ 43. To the extent that the circuit court premised its decision solely on the lack of present harm to the three named customers, it did not apply a proper standard of law. The purpose of the Uniform Declaratory Judgments Act (Wis. Stat. § 806.04),[14] is to allow

---

[14] Wisconsin Stat. § 806.04 provides, in pertinent part:

(1) Scope. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such

courts to anticipate and resolve identifiable, certain disputes between adverse parties. *See* Wis. Stat. § 806.04(12); *see also Lister v. Bd. of Regents of*

declarations shall have the force and effect of a final judgment or decree, except that finality for purposes of filing an appeal as of right shall be determined in accordance with s. 808.03(1).

(2) Power to construe, etc. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder. No party shall be denied the right to have declared the validity of any statute or municipal ordinance by virtue of the fact that the party holds a license or permit under such statutes or ordinances.

(3) Before breach. A contract may be construed either before or after there has been a breach thereof.

. . . .

(6) Discretionary. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

. . . .

(8) Supplemental relief. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

. . . .

(12) Construction. This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.

474

*Univ. Wis. Sys.,* 72 Wis. 2d 282, 307, 240 N.W.2d 610 (1976). "The underlying philosophy of the [Act] is to enable controversies of a justiciable nature to be brought before the courts for settlement and determination *prior to the time that a wrong has been threatened or committed." Lister,* 72 Wis. 2d at 307 (emphasis added). The *Lister* court went so far as to say that the "preferred view appears to be that declaratory relief is appropriate wherever it will serve a useful purpose." *Id.*

¶ 44. By definition, the ripeness required for a declaratory judgment is different from the ripeness required in other actions. *Milwaukee Dist. Council 48,* 2001 WI 65, ¶ 41. In *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 239 N.W.2d 313 (1976), the court analyzed a declaratory judgment involving a forfeiture statute. It declared that potential defendants "may seek a construction of a statute or a test of its constitutional validity without subjecting themselves to forfeitures or prosecution." *Id.* at 674. Thus, a plaintiff seeking declaratory judgment need not actually suffer an injury before seeking relief under the declaratory judgment statute. *Milwaukee Dist. Council 48,* 2001 WI 65, ¶ 41. What is required is that the facts be sufficiently developed to allow a conclusive adjudication. *Id.; Conta,* 71 Wis. 2d at 674. As we put it in *Miller Brands,* "the facts [must] be sufficiently developed to avoid courts entangling themselves in abstract disagreements." *Id.* at 694 (citing *Loy,* 107 Wis. 2d at 412, 414). The facts on which the court is asked to make a judgment should not be contingent or uncertain, but not all adjudicatory facts must be resolved as a prerequisite to a declaratory judgment. *Id.* at 694–95 (citing *Loy,* 107 Wis. 2d at 412).

¶ 45. Time Warner acknowledges that declaratory judgments are permissible when the harm is only anticipatory, but it maintains that the circuit court's dismissal of the claims for declaratory and injunctive relief was nonetheless in accord with the ripeness requirements for justiciability. It argues that the circuit court properly recognized that late-payment fees might never be imposed on these customers, because the customers themselves control whether they will be late in paying their monthly cable bills. Time Warner asserts that this absence of certainty precludes conclusive adjudication and the controversy is not justiciable. We disagree.

¶ 46. In *Loy,* this court adopted the proposition that: "The imminence and practical certainty of the act or event in issue, or the intent, capacity, and power to perform, create justiciability as clearly as the completed act or event, and is generally easily distinguishable from remote, contingent, and uncertain events that may never happen." *Loy,* 107 Wis. 2d at 414 (quoting Borchard, *Declaratory Judgments* 60 (2d ed.)). Time Warner's imposition of a $5.00 fee for late payment is an imminent and practical certainty. The plaintiffs allege that, on average, 10 to 15 percent of Time Warner's customers pay the late fee each month. Time Warner offered no evidence that this trend will not continue. The customers' allegations must be taken as true.

¶ 47. Thus, the central issue is whether Time Warner has the legal right to impose a $5.00 late-payment fee on its customers under their contracts. If it does, the controversy is over. It if does not, additional proceedings will be required. This issue is not hypothetical, abstract, or remote. It is real, precise, and immediate. The circuit court has the means to obtain

476

whatever additional facts are necessary to determine conclusively whether Time Warner's use of the $5.00 late fees is lawful. The matter, when addressed, will be based purely on the legal validity of the fee commonly imposed on a set of Time Warner's cable television customers.

¶ 48. If the issue is viewed as the construction or validity of a contract provision, it falls expressly within the scope of the declaratory judgment statute:

> Any person interested under a . . . written contract . . . or whose rights, status or other legal relations are affected by a . . . contract . . . *may have determined any question of construction or validity arising under* the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder.

Wis. Stat. § 806.04(2) (emphasis added).

¶ 49. The court of appeals dismissed the force of this language, stating that "it is clear from the amended complaint that the customers are seeking much more than a construction of the validity of the contract or a declaration of their rights thereunder." *Putnam,* 2001 WI App 196, ¶ 26. It pointed to that part of the declaratory and equitable relief claim that seeks damages, then remarked that "the remaining claims seek court orders requiring Time Warner to perform various types of tasks (e.g. conducting studies, disclosing certain information, providing notice to customers, etc.). These requests are well beyond the scope of the Uniform Declaratory Judgments Act . . . ." *Id.*

¶ 50. The inconspicuous "etc" in the court's analysis includes the principal claims for relief under § 806.04—a declaration of rights under the con-

tract and injunctive relief for the future.[15] These are precisely the types of claims that the Uniform Declaratory Judgments Act is intended to address. A circuit court's declaration would resolve uncertainty about the lawfulness of the late-payment fees in Time Warner's cable-programming contracts.[16]

¶ 51. Finally, Time Warner argues that the customers would have an adequate remedy at law if they challenged a late-payment fee by paying it under protest and then suing for recovery of the payment. Under the circumstances, this alternative would be time-consuming, costly, and impractical. In any event, the existence of an adequate remedy at law does not necessarily obviate the propriety of declaratory relief. The fact that relief may be sought is but one factor to be

---

[15] *See supra* note 12.

[16] It is true that the nature of some of the relief sought by the customers in their declaratory judgment action extends beyond the scope of the Uniform Declaratory Judgment Act. For example, one of the claims for declaratory relief is an equitable claim for refund of excessive late fees already paid. According to the court of appeals, "These claims amount to an action for damages and are not the proper subject of an action for declaratory judgment." *Putnam,* 2001 WI App 196, ¶ 26 (citing *F. Rosenberg Elevator Co. v. Goll,* 18 Wis. 2d 355, 363, 118 N.W.2d 858 (1963) ("It is not the role of declaratory judgment to take the place of an action for damages.")).

Nevertheless, the justicability of a declaratory judgment claim hinges on an inspection of all the claims for relief sought. If one or more of the claims for relief are properly justiciable through a declaratory judgment, the action should proceed. *See* Wis. Stat. § 806.04(1) ("Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations *whether or not further relief is or could be claimed.*") (Emphasis added.)

weighed in deciding whether declaratory judgment is appropriate. *Lister,* 72 Wis. 2d at 307 ("declaratory relief is appropriate wherever it will serve a useful purpose, and the fact that another remedy exists is only one factor to consider in determining whether to entertain the action").

¶ 52. In sum, the circuit court's denial of a hearing on the customers' claims for declaratory relief resulted from a misapplication of the ripeness requirement for declaratory actions. Under this court's standards for justiciability, the present action for declaratory relief is ripe for judicial determination. Because the circuit court misapplied the governing law by dismissing the customers' claims for declaratory relief on the basis that it did, we conclude that the circuit court erroneously exercised its discretion.

## III. CONCLUSION

¶ 53. We conclude that the voluntary payment doctrine precludes the customers in this action from recovering the allegedly unlawful portion of the monthly late-payment fee that they paid without protest to Time Warner. However, we also conclude that the circuit court erroneously exercised its discretion in barring the customers' claim for declaratory relief from Time Warner's future imposition of the $5.00 late-payment fee. The issue to be decided is sufficiently clear and imminent for a court to conclusively determine legal rights under this provision of the contract. Therefore, a declaration as to the legality of the future imposition of Time Warner's late-payment fee is appropriate.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause is remanded to the circuit court.

¶ 54. WILLIAM A. BABLITCH, J. *(concurring in part, dissenting in part).* The majority refuses to allow a claim based on an unlawful liquidated damages provision to serve as an exception to the voluntary payment doctrine. In other words, the majority holds that absent fraud, duress, or mistake of fact, the voluntary payment doctrine prohibits recovery notwithstanding the existence of an unlawful liquidated damages provision. I disagree and accordingly respectfully dissent to parts I and II A of the majority opinion. I join part II B of the majority opinion.

¶ 55. Time Warner is a monopolist for cable television programming in the Milwaukee area. If customers do not buy its product, the customers are free to go elsewhere. Unfortunately for the customers, there is no "elsewhere" to go for cable services. As a general proposition, customers in a government created monopoly deserve special protection.

¶ 56. For purposes of this action, we must assume that Time Warner charges a late fee of $5.00, which in fact costs them $0.38 to $0.48. The $5.00 fee is written into the contract as liquidated damages. "Late fees" are not subject to the rigid controls imposed upon Time Warner by the cable commission—controls which are the price Time Warner pays for its monopoly. If customers do not pay the late fee, eventually they are presumably cut off.

¶ 57. As stated above, but it is worth repeating, for purposes of this case at this time in the proceedings, we must assume the truthfulness of all the petitioner's allegations.

¶ 58. Thus, we must assume that the cost to Time Warner was $0.38 to $0.48, not the $5.00 it charged. We must assume this $5.00 fee does not bear a reasonable

relationship to the actual cost. We must assume that the late fee is already incorporated into the basic cable rates.

¶ 59. In sum, we must assume the charging of a $5.00 late fee is unreasonable and unconscionable, and accordingly an unlawful liquidated damages provision.

¶ 60. Yet the majority says there is nothing the customer can do because the fee was paid by the customer without protest.

¶ 61. Why should a customer protest the payment of a fee if it has no reason at the time of payment to believe that it is unreasonable and/or unconscionable? If that is the law, and the majority says it is, then all payees of all late fees pursuant to prior agreements regarding late fee payments, whether to banks, credit cards, bills for services, and the like, must automatically protest at the time of payment or lose the right to contest it. That is, of course, absurd. Yet it is the requirement set out by the majority.

¶ 62. *G. Heileman Brewing Co. v. City of La Crosse,* 105 Wis. 2d 152, 312 N.W.2d 875 (Ct. App. 1981), relied upon by the majority, is simply inapplicable. In *Heileman,* the government was the defendant. Here, the entity sued is in the private sector. In *Heileman,* the government was not accused of any wrongful conduct. Here, Time Warner is accused of wrongful conduct. In *Heileman,* the claim was unduly delayed. Here, the claim is within the statutes of limitation.

¶ 63. *Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983), teaches that even though the circuit court's determination of the validity of a stipulated liquidated damages clause is a question of law, that question is derived from a resolution of disputed facts or references. Most significantly, *Wassenaar* teaches: "In deciding whether a stipulated damages

481

clause is valid, then, the trial judge should inquire into all relevant circumstances, including such matters as the existence and extent of the anticipated and actual injury to the nonbreaching party." *Id.* The majority, in sharp contrast to the mandate in *Wassenaar,* allows no inquiry.

¶ 64. Furthermore, the majority ignores the analysis put forth in *Wassenaar* which articulates three questions a circuit court should consider in determining the validity of a liquidated damage provision: "(1) Did the parties intend to provide for damages or for a penalty? (2) Is the injury caused by the breach one that is difficult or incapable of accurate estimation at the time of contract? and (3) Are the stipulated damages a reasonable forecast of the harm caused by the breach?" *Id.* at 529–30. (Footnotes omitted).

¶ 65. These three questions, in my view, are quite distinct from the inquiries made in a voluntary payment doctrine case not involving liquidated damages.

¶ 66. Here, again assuming the truthfulness of the assertions, Time Warner flunks at least two of the three. First, there was no way for the customer to accurately estimate the injury to Time Warner when paying late. Second, the stipulated damage of $5.00 is not a reasonable forecast of the harm caused, $0.38 to $0.48.

¶ 67. The implications of this case are very significant to the consumer and the private sector. The majority holds that a late fee paid by a consumer pursuant to a private agreement regarding late fee payment without protest cannot in the absence of fraud, duress, or mistake of fact be challenged at a later date. I would hold that unlawful liquidated damages are an exception to the voluntary payment doctrine. I respectfully dissent in part.

¶ 68. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins in this opinion.

¶ 69. DIANE S. SYKES, J. *(dissenting in part)*. I agree completely with the majority opinion on the issue of the voluntary payment doctrine's application to this case, and therefore join the majority in Parts I and II A, in which the court affirms the court of appeals' decision affirming the circuit court's dismissal of the plaintiffs' claims for monetary relief in counts I-VIII of the amended complaint. I disagree, however, with the majority's conclusion in Part II B that the circuit court erroneously exercised its discretion in dismissing count IX, the plaintiffs' claim for declaratory relief.

¶ 70. I conclude that the court of appeals properly affirmed the circuit court's conclusion that the case was not suitably postured for declaratory judgment, in that the claim was not ripe for judicial determination. I would therefore affirm the court of appeals' decision in its entirety.

¶ 71. The decision to grant or deny declaratory relief is entrusted to the sound discretion of the circuit court. *Jones v. Secura Ins. Co.,* 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575; *Milwaukee Dist. Council 48 v. Milwaukee County,* 2001 WI 65, 244 Wis. 2d 333, 351, 627 N.W.2d 866; *Loy v. Bunderson,* 107 Wis. 2d 400, 407, 320 N.W.2d 175 (1982). "While, as in all discretionary acts of a court, reasonable persons may sometimes differ in the outcome, all that this court need find to sustain a discretionary act is that the trial court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy,* 107 Wis. 2d at 414–15. Applying this deferential stan-

483

dard of review here, I conclude that the circuit court's discretionary decision to dismiss the claim for declaratory relief must be upheld.

¶ 72. Though the authority to declare rights under the Uniform Declaratory Judgment Act is broad, it is not unlimited in scope. *Sipl v. Sentry Ind. Co.,* 146 Wis. 2d 459, 464, 431 N.W.2d 685 (Ct. App. 1988). The standards for determining the threshold justiciability of a claim for declaratory relief, set forth in the majority opinion at ¶ 40, assure that courts will not become entangled in abstract disagreements or be called upon to resolve contingent claims or render essentially advisory rulings. *Miller Brands-Milwaukee v. Case,* 162 Wis. 2d 684, 694–95, 470 N.W.2d 290 (1991). The fourth requirement of the *Loy* justiciability equation—the requirement of ripeness—guarantees that declaratory judgment is not used as a procedural tool for the adjudication of hypothetical issues. *Klaus v. Vander Heyden,* 106 Wis. 2d 353, 365, 316 N.W.2d 664 (1982). Courts will not entertain actions for declaratory judgment in order to "determine future rights in anticipation of an event that may never happen." *Selective Ins. Co. v. Michigan Mut. Liab. Ins. Co.,* 36 Wis. 2d 402, 405, 153 N.W.2d 523 (1967).

¶ 73. The circuit court in this case determined that the claim for declaratory relief was essentially speculative in nature and therefore not ripe. The court noted that the complaint did not contain an allegation sufficient to support a ripe declaratory claim because "no one asserted that I have a late bill fee, that I have not paid it, and I don't intend to pay it, and I've not paid the late fee as well."

¶ 74. The majority construes this conclusion on the part of the circuit court as an error of law, interpreting it as a requirement of present injury. I disagree.

The circuit court was simply concluding that the amended complaint was insufficient because it lacked allegations of even an anticipatory injury, and therefore the declaratory judgment claim, at least as it was then pleaded, was premised on a contingent event that may never happen. The circuit court noted that had the plaintiffs simply alleged that they had a late or unpaid bill on which they had been assessed or were about to be assessed an alleged illegal late fee, then "the plaintiff would be entitled to a declaratory judgment and decision perhaps on injunctive relief. But they haven't done that."

¶ 75. I cannot agree with the majority's conclusion that the circuit court erroneously exercised its discretion in dismissing the declaratory judgment claim. While this court might disagree with the circuit court's resolution of the ripeness issue, the record nevertheless reflects that the circuit court examined relevant facts, applied a proper standard of law, and reached a conclusion that a reasonable judge could reach. I would affirm the court of appeals on all issues. Accordingly, I respectfully dissent from Part II B of the majority opinion.

¶ 76. I am authorized to state that Justices JON P. WILCOX and N. PATRICK CROOKS join this dissenting opinion.