COURT OF APPEALS
DECISION
DATED AND FILED

**July 29, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP1175**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV1299

IN COURT OF APPEALS
DISTRICT III

---

MINORITY BUSINESS ASSOCIATION OF WISCONSIN AND DIVINE LANDSCAPING LLC,

    PLAINTIFFS-APPELLANTS,

  V.

WISCONSIN DEPARTMENT OF AGRICULTURE, TRADE, AND CONSUMER PROTECTION,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Waukesha County: MICHAEL J. APRAHAMIAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Minority Business Association of Wisconsin and Divine Landscaping LLC (collectively, "MBAW") appeal a circuit court order granting summary judgment to the Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP").  MBAW argues that the court erred by rejecting its constitutional challenges to WIS. STAT. § 93.15 (2023-24),[1] which authorizes DATCP to require Wisconsin businesses to permit access to documents and respond to written questions as part of a preliminary investigation.  The court rejected MBAW's arguments on the merits, but we conclude that MBAW has failed to demonstrate a justiciable controversy.  Therefore, we affirm the circuit court's order on different grounds.

## BACKGROUND

¶2     This appeal centers on the constitutionality of WIS. STAT. § 93.15. DATCP exercises its authority to collect documents and information by issuing "civil investigative demands" ("CIDs").  According to DATCP, the agency's authority to issue CIDs can be traced back to 1921, when the legislature first authorized the Department of Agriculture to conduct preliminary investigations. *See* 1921 Wis. Laws, ch. 571, §§ 1495-20, 1495-21.

¶3     DATCP's authority to issue CIDs is now set forth in WIS. STAT. ch. 93, which provides that "[t]he department may, at any time, conduct such preliminary investigation as is necessary and proper to determine whether a hearing or proceeding ought to be begun under the provisions of this chapter." WIS. STAT. § 93.16(1).  To conduct these preliminary investigations, the statute

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

permits DATCP to use "[t]he authority contained in [WIS. STAT.§§] 93.14 and 93.15." Sec. 93.16(2).

¶4      MBAW's constitutional challenges focus on the investigative authority set forth in WIS. STAT. § 93.15. Subsection (1) of this statute provides that DATCP

> may, by general or special order, require persons engaged in business to file with the department, at such time and in such manner as the department may direct, sworn or unsworn reports or sworn or unsworn answers in writing to specific questions, as to any matter which the department may investigate.

Sec. 93.15(1). Subsection (2) provides that DATCP and its agents "may have access to and may copy any document, or any part thereof, which is in the possession or under the control of any person engaged in business, if such document, or such part thereof, is relevant to any matter which the department may investigate." Sec. 93.15(2). Subsection (3) provides that

> [n]o person shall refuse or fail to render any report or answer required under this section at such time and in such manner as the department may prescribe. No person shall refuse, neglect or fail to submit, for the purpose of inspection or copying, any document demanded under this section. No person shall willfully make any false entry or statement in any report or answer required or document demanded under this section. No person shall willfully fail to make full and true entries and statements in any report or answer required or document demanded under this section. No person shall, for the purpose of embarrassing the department in the conduct of any investigation, hearing or proceeding, remove out of the state or mutilate or alter any document. No person shall, except through judicial process, resist or obstruct any official or subordinate of the department in the exercise of the official's or subordinate's lawful authority.

Sec. 93.15(3). Finally, WIS. STAT. ch. 93 imposes criminal penalties on "[a]ny person who willfully violates … [§] 93.15(3)." *See* WIS. STAT. § 93.21(4).

¶5 On August 14, 2023, MBAW filed a three-count complaint for a declaratory judgment and injunctive relief, alleging that this statutory scheme "clearly and facially violates the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Wisconsin Constitution (collectively, the 'Fourth Amendment')." Specifically, MBAW alleged that these provisions of WIS. STAT. ch. 93 "impose[] criminal punishment on those who refuse a warrantless search, with no opportunity for precompliance review." Count 1 of MBAW's complaint sought "a declaration that this search regime … is unconstitutional and invalid," as well as an injunction "prohibiting DATCP from conducting searches under or otherwise enforcing this search regime."

¶6 Count 2 of MBAW's complaint focused on DATCP's use of WIS. STAT. § 93.15(2) to investigate unfair trade practices under WIS. STAT. § 100.20. MBAW alleged that "searches for violations of [§] 100.20 or any of the regulations enacted thereunder must meet the warrant and probable cause requirements." Accordingly, MBAW sought "a declaration that it is unconstitutional for DATCP to use [§] 93.15(2) to investigate violations of [§] 100.20 or the regulations enacted thereunder" and "an injunction … prohibiting DATCP from conducting searches for violations of [§] 100.20 using … [] § 93.15(2)."

¶7 Count 3 of MBAW's complaint challenged "DATCP's practice of issuing special orders under [WIS. STAT. §] 93.15(1) with no notice or opportunity for [a] hearing." MBAW asked the circuit court for declaratory and injunctive

4

relief that would require DATCP to comply with the notice and hearing provisions set forth in WIS. STAT. § 93.18.[2]

¶8      On the same day it filed the complaint, MBAW also filed a motion for a temporary injunction. The motion was accompanied by affidavits from Erick Rosas, the co-owner of Divine Landscaping, and Jason Pehowski, president of MBAW and owner of Always Towing & Recovery, Inc. Counsel for MBAW also submitted an affidavit that included several examples of CIDs issued by DATCP, as well as two examples of criminal complaints arising from business operators' inadequate responses to CIDs.

¶9      In its brief in support of a temporary injunction, MBAW relied on *Los Angeles v. Patel*, 576 U.S. 409 (2015), to argue that its constitutional challenges were "very likely to succeed on the merits." In *Patel*, the United States Supreme Court struck down a municipal ordinance requiring hotel operators to keep guest records and make them available to police officers on demand. *Id.* at 412. The Court determined that this ordinance was facially unconstitutional under the Fourth Amendment "because it penalizes [hotel operators] for declining to turn over their records without … any opportunity for precompliance review." *Id.* MBAW argued that Wisconsin's statutory "scheme … is no different, except it is

---

[2] WISCONSIN STAT. § 93.18(2) provides

> in any matter relating to issuing, revoking or amending a special order relating to named persons, [the department] shall serve upon the person complained against a complaint in the name of the department and a notice of a public hearing thereon to be held not sooner than 10 days after such service.

even more problematic (since it is not limited to a single industry, such as hotels, or a single document, such as registries)."

¶10 In its opposition to MBAW's motion for a temporary injunction, DATCP first argued that MBAW was unlikely to succeed on the merits because the "[p]laintiffs offer[ed] no reason to suspect they will ever—let alone soon—receive a CID." Thus, DATCP contended that there was no justiciable controversy for the circuit court to adjudicate.

¶11 In the event that the circuit court reached the merits of MBAW's constitutional challenge, DATCP argued that its typical use of CIDs was distinguishable from the on-the-spot searches in *Patel*. Specifically, it is undisputed that "DATCP typically provides recipients '14 days to 31 days' to respond to CIDs." As such, DATCP argued that its CIDs are the equivalent of administrative subpoenas, which *Patel* recognized as "one way in which an opportunity for precompliance review can be made available." *Id.* at 423. Because DATCP's typical approach to CIDs gave recipients the opportunity for precompliance review, DATCP argued that "[t]hese valid applications of the statute bar a facial challenge, unlike the ordinance in *Patel* that did not itself authorize any constitutional searches."

¶12 At a hearing on November 27, 2023, the circuit court denied MBAW's motion for a temporary injunction on the merits. The court agreed with DATCP that "there certainly are applications [of WIS. STAT. § 93.15(2)] that would survive constitutional muster." Although the court expressed concern that DATCP had not implemented more reliable safeguards in its use of CIDs, the

court concluded that MBAW's facial challenge failed.[3]  The court did not address DATCP's argument that the controversy was not justiciable.

¶13     On November 29, 2023, the circuit court entered its order denying MBAW's motion for a temporary injunction.  The parties then stipulated that "the [c]ourt's order … can and should be converted into an order granting [DATCP] summary judgment on [MBAW's] claims" and that the evidence presented during the briefing on the temporary injunction motion would constitute the record for appeal.  The court entered its order granting DATCP summary judgment on April 30, 2024.  MBAW now appeals.

## DISCUSSION

¶14     In its opening brief, MBAW reiterates its argument that the inspection statute is facially unconstitutional under *Patel*.  MBAW contends that the circuit court erred by "analyz[ing] the constitutionality of the inspection statute not on its face but in view of how DATCP actually uses the statute."  MBAW also renews its arguments regarding the use of WIS. STAT. § 93.15(2) to investigate unfair trade practices and whether the notice and hearing procedures in WIS. STAT. § 93.18 apply to special orders under § 93.15(2).

---

[3] MBAW also sought a temporary injunction requiring DATCP to conduct a hearing under WIS. STAT. § 93.18 before using WIS. STAT. § 93.15 to conduct a preliminary investigation. DATCP argued that the legislature did not intend this result and that MBAW's construction of these statutes was "nonsensical" and "topsy-turvy."  The circuit court determined that DATCP "ha[d] the better argument … that there is no need to have any sort of hearing prior to doing the preliminary investigation."

In addition, MBAW sought a temporary injunction on the issue of whether DATCP could use the tools in WIS. STAT. § 93.15 to investigate possible violations of WIS. STAT. § 100.20 and accompanying regulations.  The circuit court did not directly address this specific argument.

¶15 In its response brief, DATCP renews its threshold argument that this case is not justiciable. Specifically, DATCP argues that MBAW lacks standing because it has not established that it or its member businesses face any real risk of being targeted by the investigative procedures that they are challenging.

¶16 "A court must be presented with a justiciable controversy before it may exercise its jurisdiction over a claim for declaratory judgment." *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶28, 309 Wis. 2d 365, 749 N.W.2d 211. In order for a declaratory judgment action to be justiciable, "the complainant 'must have a legal interest in the controversy—that is to say, a legally protectable interest.'" *Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n*, 2011 WI 36, ¶47, 333 Wis. 2d 402, 797 N.W.2d 789 (citation omitted).

¶17 Here, DATCP argues that MBAW has not identified sufficient facts to demonstrate that it has the necessary legal interest/legally protectable interest. DATCP contends that there are only three sets of record facts that MBAW can rely on in order to make this showing: (1) Divine Landscaping has been "searched by the [s]tate before"; 2) DATCP issued 686 CIDs under WIS. STAT. § 93.15(2) between January 1, 2020, and September 1, 2023; and (3) one of MBAW's members "received communications from DATCP regarding consumer complaints." DATCP contends that these facts are not sufficient to demonstrate that MBAW has standing to challenge the constitutionality of § 93.15. We agree.

¶18 Regarding the first set of record facts—involving the prior search of Divine Landscaping—Rosas' affidavit averred that "someone from the Wisconsin state government knocked on the front door … of my personal residence" and "claimed they were auditing Divine Landscaping … to ensure we were making proper payments for the state's unemployment insurance program." DATCP

points out that Rosas' affidavit contains no indication that these government officials were from DATCP or that they were exercising authority under WIS. STAT. § 93.15. Instead, the reference to unemployment compensation indicates that the government agents were from the Department of Workforce Development, exercising authority under WIS. STAT. § 108.14(1).

¶19 Regarding the second set of record facts—involving the number of CIDs issued between 2020 and 2023—DATCP argues that the total "is a relatively miniscule amount" in view of data showing "that Wisconsin houses over 144,000 businesses." These numbers mean that, in any given year, "99.9% of Wisconsin businesses do *not* receive a CID." Given the remote likelihood that any particular business will receive a CID, DATCP contends that MBAW's "supposed fear of receiving a CID [is] a feigned one."

¶20 Regarding the third set of record facts, Pehowski's affidavit states that his business "has received communications from DATCP regarding its business practices and consumer complaints, often requiring [the business] to respond." DATCP points out that Pehowski did not provide any details about when these communications occurred or whether these communications had anything to do with CIDs. Accordingly, DATCP argues that this affidavit does not help MBAW establish that it has standing to challenge the statute authorizing DATCP to issue CIDs.

¶21 Because none of these facts establish that MBAW faces a real risk of receiving a CID, DATCP argues that MBAW "face[s] only the kind of 'hypothetical, abstract, or remote' risk that cannot create a justiciable controversy." *See **Putnam v. Time Warner Cable, Ltd. P'ship**,* 2002 WI 108, ¶47,

255 Wis. 2d 447, 649 N.W.2d 626 (explaining that a claim is justiciable when "[i]t is real, precise, and immediate" and not "hypothetical, abstract, or remote").

¶22    In its reply brief, MBAW does not point to any additional record facts that would support its contention that this case is justiciable.  Instead, MBAW argues that "[a] legally protectable interest is simply an interest 'protected by a statute or constitutional provision at issue.'"  *See Foley-Ciccantelli*, 333 Wis. 2d 402, ¶43.  Here, MBAW argues that it has a constitutionally protected "interest in remaining free of unreasonable, warrantless searches."

¶23    The problem with this line of argument is that every person and business in Wisconsin can claim this same right to remain free of unreasonable, warrantless searches.  Courts typically "reject[] claims of standing predicated on 'the right, possessed by every citizen, to require that the [g]overnment be administered according to law.'"  *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-83 (1982) (citation omitted).  Instead, to create a justiciable controversy, MBAW needs to establish a "real, precise, and immediate" risk of facing DATCP's use of the investigative tools in WIS. STAT. § 93.15.  *See Putnam*, 255 Wis. 2d 447, ¶47.  The nebulous facts set forth in MBAW's affidavits do not satisfy this standard.

¶24    MBAW further contends that DATCP's justiciability argument uses the wrong legal terminology and that DATCP is actually challenging ripeness

rather than standing.[4]  MBAW argues that facial challenges to statutes "are generally ripe the moment the challenged [statute] is passed," *Olson*, 309 Wis. 2d 365, ¶44 n.9, which means that its facial challenge is therefore justiciable.

¶25  We disagree that *Olson* stands for such a broad proposition.  *Olson* involved a property owner's challenge to a newly enacted town ordinance that directly affected his ability to subdivide and develop his property, which he argued amounted to an unconstitutional taking.  *Id.*, ¶¶6-18.  In rejecting the Town's argument that Olson's constitutional challenge was not ripe, our supreme court explained in a footnote:

> The Town conditioned Olson's final plat approval upon compliance with the ordinance, and Olson was left with no administrative option to challenge this decision.  As a facial challenge, Olson's suit is ripe because it challenges the very enactment of the ordinance and its application to all Town landowners.  *Such* challenges to ordinances are generally ripe the moment the challenged ordinance is passed.  *See Suitum v. Tahoe Reg'l Plan. Agency*, [520 U.S. 725, 736 n.10 (1997)]

*Olson*, 309 Wis. 2d 365, ¶44 n.9 (emphasis added).  Our supreme court's statement in *Olson* is specific to the type of land use controversy raised by the plaintiff in that particular case, and the cited footnote from *Suitum* is similarly

---

[4] We can set aside the parties' disagreement over how best to frame their respective arguments because the differing terminology still leads us to the same essential question of whether the case is justiciable.  Specifically, our supreme court has explained that "the concepts of standing and justiciability (a legally protectable interest) have been viewed as overlapping concepts in declaratory judgment cases." *Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n*, 2011 WI 36, ¶47, 333 Wis. 2d 402, 797 N.W.2d 789.  In turn, one of the factors in determining justiciability is whether "[t]he issue involved in the controversy [is] ripe for judicial determination." *Putnam v. Time Warner Cable, Ltd. P'ship*, 2002 WI 108, ¶41, 255 Wis. 2d 447, 649 N.W.2d 626.

limited to challenges to zoning ordinances. *See Suitum*, 520 U.S. at 735-36. We decline to read either footnote beyond its narrow context.

¶26 Instead, we look to the general rule from *Olson* that the purpose of a declaratory judgment action "is to allow courts to anticipate and resolve *identifiable, certain disputes* between adverse parties." *Olson*, 309 Wis. 2d 365, ¶28 (emphasis added; citations omitted). Here, in the absence of any evidence that MBAW faces a real risk of receiving a CID, much less an immediately enforced CID, MBAW has not established that there is an identifiable, certain dispute between the parties.

¶27 MBAW further argues that a plaintiff seeking a declaratory judgment "need not actually suffer an injury before seeking relief," *see Putnam*, 255 Wis. 2d 447, ¶44, "or show that an injury is 'imminent,'" *see Milwaukee Dist. Council 48 v. Milwaukee County*, 2001 WI 65, ¶46, 244 Wis. 2d 333, 627 N.W.2d 866. Instead, according to MBAW, "so long as the facts are 'sufficiently developed to allow a conclusive adjudication, declaratory relief may be rewarded 'when the harm is only anticipatory.'" *See Putnam*, 255 Wis. 2d 447, ¶45.

¶28 *Putnam* involved customers' claims for declaratory judgment and injunctive relief against a cable company that allegedly imposed late fees in excess of its costs. *Id.*, ¶4. The defendant argued that the controversy was not ripe for adjudication because the three customers named as plaintiffs might never have to pay the late fees. *Id.*, ¶45. Our supreme court disagreed with this ripeness argument, explaining that the key question for justiciability was "[t]he imminence and practical certainty of the act or event in issue, or the intent, capacity, and power to perform" that act or event. *Id.*, ¶46. Because the plaintiffs presented evidence that 10 to 15 percent of the defendant's customers paid late fees each

month, and because the defendant "offered no evidence that this trend [would] not continue," the court concluded that the imposition of late fees was "a practical certainty." *Id.* Accordingly, our supreme court rejected the defendant's argument that the controversy was not justiciable. *Id.*, ¶45. MBAW argues that DATCP's argument similarly fails because it relies on the "same lack of certainty" faced by the successful plaintiffs in *Putnam*.

¶29 We can distinguish *Putnam* for two reasons. First, the plaintiffs in *Putnam* were challenging a late fee that was actually being imposed on a significant percentage of the defendant's customers each month. *Id.*, ¶46. In contrast, it is undisputed that only around 0.1% of businesses in Wisconsin are likely to receive a CID in any given year. Given the remote likelihood that *any* business will be subject to the investigative tools in WIS. STAT. § 93.15, MBAW—which represents only a fraction of Wisconsin businesses—cannot establish that its challenge to the use of these statutory tools is "real, precise, and immediate." *See Putnam*, 255 Wis. 2d 447, ¶47.

¶30 Second, in contrast to *Putnam*, where the defendant was routinely performing the challenged act of imposing a late fee, there are no record facts indicating that DATCP has any intent to perform the hypothetical act that MBAW challenges—namely, to demand immediate compliance with a CID under threat of criminal penalty. Instead, MBAW's own evidence shows that DATCP typically gives businesses a minimum of two weeks to respond to a CID. This practice gives businesses an opportunity for precompliance review, which is sufficient under *Patel*. *See Patel*, 576 U.S. at 421 ("[W]e hold only that a hotel owner be afforded an *opportunity* to have a neutral decisionmaker review an officer's demand to search the registry before he or she faces penalties for failing to comply.").

¶31     Given this record, MBAW cannot establish either prong of *Putnam*'s test for justiciability.  *See Putnam*, 255 Wis. 2d 447, ¶46 (observing that justiciability depends on "[t]he imminence and practical certainty of the act or event in issue, or the intent, capacity, and power to perform" that act or event).  Specifically, MBAW has not demonstrated the "imminence and practical certainty" that it will face a CID, nor has MBAW established that DATCP has the intent to issue a CID that does not afford the opportunity for precompliance review.

¶32     Finally, MBAW argues that this case "is far from 'a hypothetical matter; it is a real contest over legal authority being claimed and exercised right now.'"  *See Fabick v. Evers*, 2021 WI 28, ¶10, 396 Wis. 2d 231, 956 N.W.2d 856 (citation omitted).  We disagree with this characterization because the record contains no facts whatsoever to indicate that DATCP is claiming and exercising legal authority to issue immediately enforced CIDs.  On the contrary, the record created by MBAW establishes that DATCP's standard practice is to issue CIDs that provide "at least 2 weeks" for response.  Likewise, the two criminal complaints introduced into the record by MBAW involve defendants who were both afforded ample time to comply with a CID before facing criminal penalties for noncompliance.[5]

---

[5] One of the criminal complaints that MBAW included in the record involves a defendant who initially had more than two weeks after receiving the CID to comply, with DATCP subsequently extending the deadline twice, for a total of ten months.  The complaint was not filed until around 15 months after the issuance of the CID.  The other complaint involves a defendant who had more than three weeks to comply with the CID.  After the defendant also failed to comply with two subpoenas, the DATCP pursued criminal charges more than three years after the initial deadline to comply with the CID.

¶33    Thus, MBAW has failed to demonstrate that this case involves "a real contest over legal authority being claimed and exercised right now." *See id.* Instead, the record demonstrates that DATCP is exercising its statutory authority by issuing CIDs that give recipients the opportunity for precompliance review. In its brief to this court, DATCP has identified several different avenues for a recipient of a CID to obtain this precompliance review.

¶34    MBAW argues that this "dizzying array of seemingly alternative paths to precompliance review" is not sufficient and that a business facing a CID would be unlikely to obtain judicial review "before … fac[ing] penalties for failing to comply," just like the hotel operators in *Patel*. We disagree that the factual record in this case is at all comparable to *Patel*, where the challenged ordinance targeted a specific industry and provided that "[a] hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot." *Patel*, 576 U.S. at 421.

¶35    Furthermore, MBAW's arguments about the adequacy of the opportunities for precompliance review highlight why this case is not justiciable. MBAW argues that it could "think up a dozen or more commonplace scenarios" in which a business owner targeted with a CID might miss out on the opportunity for precompliance review. The problem for MBAW, however, is that a declaratory judgment action requires "that the facts be sufficiently developed to allow a conclusive adjudication." *See Putnam*, 255 Wis. 2d 447, ¶44. In the absence of a developed factual record, MBAW is merely asking us to opine as to whether it would be constitutional for DATCP to use the statute in a hypothetical manner. This court cannot render advisory opinions about hypothetical scenarios. We therefore conclude that this case is not justiciable.

## CONCLUSION

¶36 Because MBAW has not established the justiciability of its claims for declaratory and injunctive relief, we affirm the circuit court's order granting summary judgment to DATCP.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.