FRIENDS OF KENWOOD, Nola Cross, Barbara Dietrich, Eva Donat, Charlotte Howard, Marni Kaiser, Andrew Kane, Carole Kane, Kenneth Klein, Perry Margoles, Michael Mosesson and Steve Tilton, Plaintiffs-Appellants,†

v.

Michael GREEN and Max Rasansky, Defendants,

The BOARD OF TRUSTEES OF CONGREGATION EMANU-EL B'NE JESHURUN and Congregation Emanu-El B'Ne Jeshurun, Defendants-Respondents.

Court of Appeals

*No. 00–0680. Submitted on briefs July 6, 2000.—Decided September 19, 2000.*

## 2000 WI App 217

(Also reported in 619 N.W.2d 271.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert E. Sutton,* Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert H. Friebert, S. Todd Farris* and *Brian C. Randall* of *Friebert, Finerty & St. John, S.C.,* Milwaukee.

Before Wedemeyer, P.J., Curley and Vergeront, JJ.

¶ 1. WEDEMEYER, P.J. The Friends of Kenwood, et al., (hereinafter "Kenwood")[1] appeal from a final order dismissing their complaint against The Board of Trustees of Congregation Emanu-El B'Ne Jeshurun and Congregation Emanu-El B'Ne Jeshurun (hereinafter "Congregation"). The complaint alleged that the Board and the Congregation violated various by-laws, engaged in deceit, misrepresentation, and breached their fiduciary duty to Kenwood, which "create[d] a promissory estoppel which unjustly enriched . . . [the] Congregation."

¶ 2. Kenwood claims that the trial court erred when it granted the motion to dismiss for failure to state a claim against the Congregation and the Board.[2] Kenwood argues that the Congregation and the Board are proper, indispensable parties to this action. Because the complaint fails to state a claim for relief, we affirm.

## I. BACKGROUND

¶ 3. The Congregation oversees a Jewish synagogue, which has been located at 2419 East Kenwood

---

[1] The trial court refused to recognize the "Friends of Kenwood" as a proper party to this action because it was not particularly identified. For ease of reference, however, we refer to the plaintiffs remaining in the action—Nola Cross, Barbara Dietrich, Eva Donat, Jill Heavenrich, Charlotte Howard, Marni Kaiser, Andrew Kane, Carole Kane, Kenneth Klein, Perry Margoles, Michael Mosesson, and Steve Tilton—collectively as Kenwood.

[2] Board President Michael Green, and Board Trustee Max Rasansky, were also sued individually. The trial court did not dismiss the complaint against Green or Rasansky. Therefore, this opinion addresses only the trial court's dismissal relative to the Congregation and the Board.

81

Boulevard in the City of Milwaukee since 1927. It is an incorporated religious society existing under the laws of the State of Wisconsin. The Congregation consists of approximately 1,300 member families, and is governed by a twenty-one-person Board of elected volunteer members. Following a study in 1993, the Board concluded that Congregation members had demonstrated a definite trend of establishing residences in the suburbs north of the City of Milwaukee, away from the Kenwood facility. The development of this trend posed a potential problem for membership participation and, in turn, membership retention.

¶ 4. Addressing this population shift of its Congregation members, the Board decided that a second facility for worship, teaching, and cultural enhancement was needed. In March 1994, they purchased a site in River Hills, the northern most suburb in Milwaukee County. A fundraising drive was commenced. When the drive did not reach its intended goal, a scaled-down version of the originally planned facility, excluding a place of worship, was built on a ten-acre tract. In keeping with this amended purpose, the denominated Family Worship and Learning Center on the Joseph and Vera Zilber Campus was dedicated on October 19, 1997.

¶ 5. In late November 1997, the president of the Board, Michael Green, informally approached the University of Wisconsin-Milwaukee Fine Arts Department and asked if it had any interest in purchasing the Congregation's Kenwood facility. It did and, in September 1998, the Board approved the sale of the Kenwood facility to the University of Wisconsin-Milwaukee Foundation (UWMF). UWMF submitted an offer to purchase the facility for $4.5 million. The Board advised the Congregation of this development.

¶ 6.  On October 26, 1998, the Board called a special informational meeting of the Congregation to discuss the offer of purchase that had been received. The notice stated:

> [M]embership will be advised as to the content of the offer, the efforts made by the Board . . . in looking at alternatives to selling, and the financial implications of our accepting or not accepting this offer.

> After a short presentation, members will have an opportunity to tell the Board . . . their concerns, to ask questions and to discuss the pros and cons and their impact on our Congregation's future. The task of making such decisions is vested in the Board . . . according to our by-laws.

¶ 7.  At the meeting, a number of members objected to the Board's decision to sell the Kenwood facility without allowing the entire membership to vote on the issue. Members were advised that the by-laws permitted the Board to make such a decision. The Board subsequently approved the sale.

¶ 8.  The Board later learned, however, that the title insurance company would not ensure clear title if the sale was not approved by the Congregation. As a result, a special meeting of the Congregation was held on February 1, 1999, to vote on the sale. The sale was approved by a two-to-one majority vote with over 600 members voting. Kenwood complains that the vote was unreasonable because members' names appeared on the ballot and members had to travel to the River Hills facility to cast the vote. Kenwood asserts that it was unreasonable to require a vote without assuring anonymity and to require the members to travel all the way to the new facility in order to cast their vote.

¶ 9. Kenwood filed a complaint against the Board, the Congregation, Green and Max Rasansky (a Board member), in an attempt to block the sale. The complaint alleged that the defendants engaged in deceit, misrepresentation, a breach of fiduciary duty, and that the defendants violated the by-laws of the Congregation. Essentially, the complaint contended that Kenwood was deceived into accepting the River Hills construction project because of the assurances given that the original Temple would not be abandoned. The defendants filed a motion to dismiss, alleging that the complaint failed to state a claim for relief. The trial court granted the motion as to the Board and the Congregation on the basis that the allegations lacked particularity as to which Board members and Congregation members made the misrepresentations and to which Kenwood members such misrepresentations were made. Kenwood now appeals.

## II. ANALYSIS

¶ 10. This is an appeal from an order dismissing a complaint for failure to state a claim. The plaintiffs in this case are twelve members of the Congregation who are in good standing. They are described as the "Friends of Kenwood." Their amended complaint consists of twenty-seven pages, thirty-five factual averments, fifty-two appended exhibits, and three causes of action. The complaint concludes with a request for: (1) an injunction and declaratory relief voiding the contract of sale of the Kenwood Temple; (2) an order removing the Board of the Congregation; (3) an order granting reimbursement of all contributions and canceling all pledges made for the building of the River Hills facility; and (4) an order for costs, disbursements, and reasonable attorney's fees. In summary,

Kenwood seeks declaratory and injunctive relief voiding the sales contract with UWMF based on violations of the Congregation's by-laws, misrepresentation, and/or breach of fiduciary duty. We conclude that the complaint fails to state a claim for relief under any of these claims.

¶ 11. A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint. *See Watts v. Watts*, 137 Wis. 2d 506, 512, 405 N.W.2d 303 (1987). Whether the complaint states a claim for relief is a question of law that we review independently. *See id.* For purposes of review, we accept the facts stated in the complaint, along with all the reasonable inferences that may be drawn from them, as true. *See id.* Unless it seems certain that no relief could be granted under any set of facts that the plaintiff could prove, dismissal of the complaint is improper. *See id.* When a document is attached to the complaint and made a part thereof, it must be considered a part of the pleading, and may be resorted to in determining the sufficiency of the pleadings. *See Jennaro v. Jennaro*, 52 Wis. 2d 405, 411, 190 N.W.2d 164 (1971). When the allegations of a pleading are inconsistent with the terms of a document attached as an exhibit, the terms of the document fairly construed, prevail over averments differing in the complaint. *See Graue Mill Dev. Corp. v. Colonial Bank and Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991).

## A. Misrepresentation Claim.

¶ 12. Kenwood claims that the complaint states a misrepresentation claim against the Board and the Congregation based on the fact that "temple officials, acting in concert, induced the membership of the Congregation" to approve and fund the River Hills facility,

"by repeatedly promising that the Congregation would maintain" the Kenwood Temple. Kenwood asserts that Green and Rasansky secretly solicited the sale of the Kenwood Temple, advised the Board what they were doing, and convinced the Board to keep these actions secret. Kenwood also claims that Green and Rasansky "together with the Board" secretly negotiated the sale of the Kenwood Temple, withheld material financial information from the membership, and only held the Congregational vote because the title insurance company required it. Kenwood then asserts that the Congregation was unjustly enriched as a result of these actions.

¶ 13. To succeed in a fraudulent misrepresentation claim, the representation must be of fact and made by the defendant, the representation must be false, and the claimant must have believed the representation was true and relied on it to his or her damage. *See Foss v. Madison Twentieth Century Theaters, Inc.*, 203 Wis. 2d 210, 218, 551 N.W.2d 862 (Ct. App. 1996). A complaint pleading negligent or intentional misrepresentation must allege that the defendant misrepresented a fact to the plaintiff or to a third person with the intent that it would be communicated to or influence the plaintiff. *See Rendler v. Markos*, 154 Wis. 2d 420, 429, 453 N.W.2d 202 (Ct. App. 1990). While it is true that statements of opinion may result in a misrepresentation cause of action if the speaker knows of facts incompatible with his or her opinion, ordinarily a prediction as to events to occur in the future is to be regarded as a statement of opinion only, on which the adverse party has no right to rely. *See Wausau Med. Ctr. v. Asplund*, 182 Wis. 2d 274, 291, 514 N.W.2d 34 (Ct. App. 1994).

¶ 14. Moreover, when pleading a cause of action for fraudulent conduct, special rules apply. WISCONSIN STAT. § 802.03(2) (1997–98), provides: "FRAUD, MISTAKE AND CONDITION OF MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Section 802.03(2) is identical to FED. R. CIV. P. 9(b). The federal rule requires specification of the time, place and content of an alleged false representation. Particularity means the "who, what, when, where and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In *Rendler*, we acknowledged this similarity, *see id.* at 428, and accepted the interpretation that the rule "requires specification of the time, place, and content of an alleged false misrepresentation," *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987), because the particularity requirement affords notice to a defendant for the purposes of a response. As additional rationale, we agree that our statute is "designed to protect defendants whose reputation could be harmed by lightly made charges of wrongdoing involving moral turpitude, to minimize 'strike suits,' and to discourage the filing of suits in the hope of turning up relevant information during discovery." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 n.2 (1st Cir. 1980).

¶ 15. The essence of Kenwood's claim for misrepresentation is contained in paragraphs 10, 11 and 12 of its complaint wherein it alleges that between 1993 and October 19, 1997, unnamed trustees and officials affiliated with the advancement of the River Hills project, represented to the membership of the Congregation that the opening of the new facility "would not result in the replacement of the Kenwood Temple." Paragraph 10 alleges:

Throughout the five years that the aforesaid congregation trustees and officials were acting in concert regarding their three campaigns on behalf of building the River Hills campus, in a multiplicity of ways they repeatedly represented to the membership at large—including all of the plaintiffs—that the opening of the satellite campus would not result in the replacement of the Kenwood temple. Among the ways through which the congregation trustees and officials communicated these assurances to the congregants were:

    A.    Letters;

    B.    Informational mailings . . .;

    C.    Telephone calls;

    D.    Meetings with members individually, in small groups, and at congregational services and meetings; and

    E.    A massive public relations campaign . . . .

¶ 16. This paragraph, however, fails to satisfy the pleading particularity requirements of WIS. STAT. § 802.03(2). The allegations are too general because they fail to specify the particular individuals who made the representations, and fail to specify the details of where and when the misrepresentations were made, and who the misrepresentations were made to. Subsection D of paragraph 10, for example, does not identify the individual who met with the Board or which members of the Board besides Green and Rasansky attended the meetings. Instead, the subsection generally refers to "individual[s], in small groups . . . ." This fails to satisfy the requirements of the statute.

■

¶ 17. In addition, Kenwood concedes in its brief that *"congregation officials on several occasions left the door open that the Kenwood temple someday might be sold."* (Emphasis added.) There are attachments to the

complaint that contradict the statement in paragraph 10 that the River Hills facility would not replace the Kenwood Temple. For example, in a November 30, 1993 document sent to members, then President Doris H. Chortek stated: "There are no plans to leave . . .; however, in the interest of long term planning, we have made it clear to the River Hills authorities that the needs of our Congregation may demand such a decision at some future date." Although the documents reflect expressions of hope that the Kenwood Temple would remain as a part of the Congregation, no absolute promises were made. To the extent that representations were made regarding hopes for future events, such cannot constitute grounds for a misrepresentation claim. *See Wausau Med. Ctr.*, 182 Wis. 2d at 291.

¶ 18.    Paragraph 11 states that "the assurances" took a variety of forms, which are listed. These included several letters to "members" or the "congregation" and multiple newspaper articles discussing the intent to maintain both the Kenwood and the River Hills sites. However, reference to these letters and numerous newspaper articles alone, also fails to satisfy the particularity requirements. Each plaintiff must allege that he or she believed the statement to be true and relied upon it to his or her detriment. *See Foss*, 203 Wis. 2d at 218. This is especially true in a case involving multiple plaintiffs, multiple defendants and multiple representations. *See Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994) (The complaint must inform each defendant of the nature of his alleged participation in the fraud and specify who was involved in what activity.). With respect to the Board members and the Congregation, the complaint here fails to specify which members (besides Green and Rasansky) were involved in which

specific misrepresentations. The complaint lumps all of the Board members and the Congregation together. In addition, as in paragraph 10, paragraph 11 references statements about future intentions. These are not actionable as fraud. *See Wausau Med. Ctr.*, 182 Wis. 2d at 291.

¶ 19.   Paragraph 12 of the complaint then concludes that, "[a]cting . . . on the promises and representations" of unnamed officials and trustees, the plaintiffs acted to their detriment in voting to authorize construction of the River Hills facility and contributing funds for establishing the facility:

> Acting in reliance on the promises and representations of the officials, including the Board of Trustees of the Congregation as set forth hereinabove, various of the plaintiffs and other members of the Congregation acted to their detriment as follows: (1) They voted to authorize (or did not vote to oppose) construction and thereafter, (2) contributed monies for the purpose of establishing the satellite campus on Brown Deer Road in River Hills, Wisconsin. (The plaintiff, Kenneth Klein, contributed $10,000.) On October 19, 1997, the campus was opened and dedicated.

¶ 20.   Again, the paragraph fails to satisfy the specificity requirements of the statute. It is insufficient to lump the defendants together as "the officials, including the Board . . . ." Similarly, the paragraph also fails to specifically identify those individuals who acted in reliance on the representations. Instead, the paragraph refers to "*various of the plaintiffs* and *other members* of the Congregation . . . ." (Emphasis added.) Other portions of the complaint refer repeatedly to "the trustees" or "other members of the Board" or "officials."

These terms similarly fail to satisfy the particularity requirements.

¶ 21.  Further, Kenwood concedes that no discussions between the Board and UWMF occurred until November 1997—after the construction of the River Hills facility was completed. This supports the defendants' representations during the preceding five years that there was no intention to abandon the Kenwood Temple. The hope was to maintain both facilities. Unfortunately, the vision did not become the reality.

¶ 22.  In sum, we conclude that because Kenwood failed to plead its misrepresentation claim with particularity, and because the claim is based on statements about future events, the misrepresentation claim lodged against the Board and the Congregation fails to state a claim for relief. The trial court did not err in granting the motion to dismiss.

*B.  By-laws Violations.*

¶ 23.  Kenwood also asserts that the Board and the Congregation engaged in activities which violated various by-laws.

¶ 24.  The complaint alleges that the Board violated Article V, § 3, Article VII, § H, Article X, § 2 and Article XI, § 2 of the by-laws. We address each in turn. Article V, § 3 provides: "All Jewish members in good standing shall have the right to vote on all matters coming before meetings of the Congregation unless by these By-laws voting privileges have been otherwise modified." However, Article V, § 3 and Article X, § 8 of the by-laws qualify the voting privilege by providing that only members who are present in person at a meeting are allowed to vote. Kenwood's complaint

about the vote on the sale is that it did not take place by mail-in ballot. The by-laws, however, do not provide for voting by mail. Rather, the by-laws require in-person voting.

¶ 25.  Article VII, § H provides: "The Board of Trustees shall manage the affairs, funds, records and property of the Congregation. It shall act on all matters of policy and perform such other duties as the members of the Congregation in regular or special meetings may prescribe." It is not altogether clear why Kenwood alleges that the Board and the Congregation violated this by-law. We assume that this article is referenced, however, based on statements made in correspondence sent to members of the Congregation.

¶ 26.  In an informational letter to the members of the Congregation dated November 30, 1993, attached as an exhibit to the complaint, then President Chortek included the following statements:

> There are no plans to leave [the Kenwood facility]; however, in the interest of long term planning, we have made it clear to the River Hills authorities that the needs of our Congregation may demand such a decision at some future date.
>
> . . . It will have the capacity to accommodate the activities of the entire Congregation although we expect that day to be far into the future.
>
> . . . We will monitor these and other assumptions on an ongoing basis.

¶ 27.  On January 22, 1996, then President Chortek again communicated with the Congregation's members. Included in her written remarks was the following:

92

We have been calling it [the River Hills facility] a satellite because the head and heart of our Congregational activities will remain at our irreplaceable facility on Kenwood Boulevard. It will remain so until some future Congregational meeting decides that we no longer need to be here and wisdom dictates that our entire enterprise should be moved to a then expanded building on Brown Deer Road.

¶ 28. From a reading of these exhibits incorporated into the complaint, we conclude that Kenwood is relying on a January 1998 letter, in which President Green assured the membership that no decision or commitment to sell the Kenwood facility would be made without the approval of the Congregation. However, when action was taken, the issue was not submitted to the Congregation for a vote because the power to sell was vested in the Board, based on the aforementioned by-law, Article VII, § H. We accord this argument little weight because the Congregation did, in fact, vote on the sale, and approved it under the terms of the Congregation's by-laws.

¶ 29. The next alleged by-law violation is based on Article X, § 2, which provides: "[s]pecial meetings of the Congregation may be called by the President or pursuant to resolution of the Board of Trustees o[r] upon written request signed by at least twenty (20) members, and the Secretary shall give notice accordingly." Kenwood asserts that they requested a special meeting under this article on November 12, 1998, and it was improperly denied. The request was denied because the intended purpose of the meeting was to allow the membership to vote on whether or not to approve the sale of the Kenwood facility. The by-laws

did not require that such a vote take place. Regardless, a membership vote did eventually occur and, therefore, this alleged violation was rendered moot.

¶ 30.   The next alleged by-law violation references Article XI, § 2, which provides that, "Robert's Rules of Order shall govern the transaction of business at meetings of the Congregation and of the Board of Trustees, except as otherwise herein provided." The complaint alleges that Robert's Rules were violated at the October 26, 1998 informational meeting, regarding the announcement that UWMF had submitted an offer to purchase the Kenwood Temple. Kenwood asserts that the Board restricted members in attendance to a maximum of two minutes to respond to the Board's hour-long presentation advising why the Kenwood site must be sold. The complaint, however, fails to state which Robert's Rule was violated by this restriction or what relief Kenwood is entitled to as a result of this restriction.

¶ 31.   Finally, Kenwood complains that the February 1, 1999 special meeting, wherein the vote by membership occurred, was conducted under "unreasonable circumstances." Specifically, Kenwood objects to the timing of the notice of the meeting, its location at the River Hills facility and the fact that it took place at night, the requirement that members had to attend the meeting to vote, the fact that the voting was not anonymous, and the failure to announce that transportation would be provided for members needing assistance. These objections, however, are unfounded as none of the complaints constitute a violation of the by-laws.

## C. Breach of Fiduciary Duty.

¶ 32.   Kenwood also asserted a cause of action based on an alleged breach of fiduciary duty. This claim, however, was dependent upon the allegations in the misrepresentation claim, which we have already rejected. Thus, we need not address this claim.[3]

*By the Court.*—Order affirmed.

---

[3] The Board and the Congregation responded to Kenwood's argument by stating that Kenwood is asserting derivative claims under WIS. STAT. ch. 181 without having complied with the requirements under the derivative action law. We need not reach this issue, however, because we have disposed of the case on other grounds.