COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP676**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV1366

IN COURT OF APPEALS
DISTRICT II

---

DANIEL THOMAS ORZECH AND SUSAN DENISE ORZECH,

PLAINTIFFS-APPELLANTS,

V.

WISCONSIN VETERINARY REFERRAL CENTER-WAUKESHA (WVRC), MEGHAN GLAZER, SARAH VUOLO, WHITNEY WITZEL, ANN MARIE PICONE, JAY GLADDEN, CAROLYN JOCHMAN, DEBRA YORK-MILLER, CHRISTINE MALLO, KERRI WIEDMEYER AND ALEXUS URBANIK,

DEFENDANTS-RESPONDENTS,

MOLLY HOPP DVM AND MIKE QUIGLEY DVM,

RESPONDENTS.

---

APPEAL from an order of the circuit court for Waukesha County: BRAD SCHIMEL, Judge. *Affirmed.*

Before Gundrum, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. By a series of orders, the circuit court narrowed and then ultimately dismissed Daniel Thomas Orzech and Susan Denise Orzech's lawsuit against a veterinary hospital and twelve veterinarians. On appeal, the Orzechs, pro se, raise more than a dozen issues related to the court's dismissal of certain parties and causes of action, evidentiary and declaratory determinations, and grant of summary judgment. We affirm.

## BACKGROUND

¶2 The Orzechs' dog passed away following hospitalizations at Ethos Veterinary Health LLC's ("Ethos") hospital. Ethos operates under the trade name Wisconsin Veterinary Referral Center – Waukesha ("WVRC"). In September 2022, the Orzechs brought suit against WVRC and twelve veterinarians. The complaint included causes of action for professional malpractice (against the veterinarians), fraudulent misrepresentation (against all defendants), fraudulent concealment (against all defendants), negligence (against all defendants), and negligent hiring and misrepresentation (against WVRC).

¶3 Ethos and the twelve veterinarians answered the complaint. In the answer, Ethos advised the Orzechs, in part, that they had "improperly identified [Ethos] as 'Wisconsin Veterinary Referral Center Waukesha (WVRC-Waukesha)'" in their complaint. Ethos alleged that it was the one that operated the veterinary hospital. Ethos and the veterinarians then denied the allegations, and raised various defenses, including, as relevant for appeal, lack of proper service of process, failure to state a claim upon which relief may be

granted, and failure to plead the fraud and misrepresentation causes of action with particularity.

¶4      In March 2023, the Orzechs filed an amended and supplemental complaint alleging that Ethos was the legal entity doing business as WVRC. They also included an additional cause of action against Ethos/WVRC for violating WIS. STAT. § 100.18 (2023-24).[1] Ethos and the twelve veterinarians answered the amended and supplemental complaint, denied the allegations relating to the new cause of action, and again raised various defenses, including, as relevant for appeal, lack of proper service of process.

¶5      In June 2023, Ethos and the twelve veterinarians filed a motion for partial dismissal. First, they moved to dismiss Ethos and two of the veterinarians (Molly Hopp and Mike Quigley) from the lawsuit based on lack of service, and the Orzechs' failure to timely amend their complaint to include Ethos as a party. They also moved to dismiss the causes of action for fraudulent misrepresentation and fraudulent concealment on the basis that these causes of action were not pled with particularity as required by WIS. STAT. § 802.03(2).

¶6      Following briefing and a hearing, the circuit court largely granted the dismissal motion. The court dismissed Ethos/WVRC, Hopp, and Quigley from the lawsuit, in part, based on lack of service. The court also dismissed the causes of action directed toward the dismissed parties.

¶7      As to the remaining ten veterinarians, the circuit court dismissed the Orzechs' causes of action for fraudulent misrepresentation and fraudulent

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

concealment because they were not pled with particularity, but allowed a claim for fraudulent concealment of veterinary records. At this point, the remaining causes of action against the veterinarians included professional malpractice, negligence, and fraudulent concealment of veterinary records.

¶8 The veterinarians then brought a motion seeking various forms of relief, which, as relevant for appeal, included a motion for partial summary judgment. Specifically, the veterinarians moved the circuit court to grant summary judgment on the part of the Orzechs' negligence cause of action that alleged negligent supervision. The veterinarians argued the Orzechs had based this cause of action on an alleged violation of the administrative code for which there was no private right of action. Following briefing and argument, the court agreed, and it dismissed the negligent supervision claim.

¶9 Then, pursuant to the circuit court's scheduling order, the Orzechs identified Dr. Bernadette Alisantosa as their sole expert in this case. Months later, after the deadline for both parties to name experts and rebuttal experts had passed, the Orzechs moved the court to allow additional expert testimony from a second retained expert. The court denied the Orzechs' request to name an additional expert, reasoning the Orzechs had known about this expert for more than one year and failed to timely disclose her.

¶10 The veterinarians then brought a motion for various forms of relief. As relevant for appeal, the veterinarians moved to exclude Alisantosa's testimony on ***Daubert***[2] grounds. The veterinarians argued Alisantosa was not qualified and

---

[2] ***Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579 (1993).

her expert opinion was not based on reliable methods or sufficient facts and data. Additionally, the veterinarians moved for summary judgment on the Orzechs' remaining causes of action. They argued they were entitled to judgment as a matter of law because the Orzechs could not prove their professional malpractice or remaining negligence claims without expert testimony. The veterinarians also argued they were entitled to judgment on the fraudulent concealment of veterinary medical records cause of action because the Orzechs had again based this cause of action on an alleged violation of the administrative code and a statute for which there was no private right of action.

¶11     At a motion hearing, the circuit court first granted judgment in favor of the veterinarians on the fraudulent concealment of veterinary medical records cause of action. The Orzechs had advised the court that they did not have anything to refute the assertion that the regulations and statute did not create a private right of action.

¶12     As for the veterinarians' motion to exclude Alisantosa based on *Daubert*, the circuit court advised the Orzechs that, based on Alisantosa's curriculum vitae and the excerpts of deposition testimony that had been provided to the court, it had "serious concerns" regarding her ability to testify regarding a standard of care. However, the court scheduled a *Daubert* hearing, and it advised the Orzechs that Alisantosa would be required to testify.

¶13     Before the *Daubert* hearing, the circuit court entered a written decision and order. It cancelled the hearing and explained:

> [It] had originally set a *Daubert* hearing to take live testimony from Dr. Alisantosa on the issue of her qualifications to render opinions as to the standard of care in this case, however, after further review of the record, particularly the deposition transcript, the Court concludes

that the undisputed facts already in the record provide sufficient basis for this Court to make the determination without an evidentiary hearing.

¶14 The circuit court then provided extensive details from Alisantosa's deposition testimony. It concluded Alisantosa had limited qualifications and her opinions were not based on reliable methods or sufficient facts and data. The court excluded Alisantosa from testifying as an expert.

¶15 Because the Orzechs no longer had an expert to testify, the circuit court next determined whether the veterinarians were entitled to judgment as a matter of law on the remaining negligence and professional malpractice causes of action. Ultimately, the court determined that the Orzechs needed expert testimony to establish the parameters of acceptable professional conduct. The court determined that without an expert, the Orzechs could not prove their remaining causes of action. It granted judgment in favor of the remaining ten veterinarians and dismissed the Orzechs' case. The Orzechs appeal. Additional facts will be included below.

## DISCUSSION

### I. The dismissal of Ethos/WVRC and two veterinarians from the lawsuit based on lack of service

¶16 "A circuit court obtains personal jurisdiction over a defendant when the defendant is served with a summons in the manner prescribed by the statutes." *Hagen v. City of Milwaukee Emps.' Ret. Sys. Annuity & Pension Bd.*, 2003 WI 56, ¶12, 262 Wis. 2d 113, 663 N.W.2d 268. "The plaintiff has the burden to prove … the defendant was properly served and is therefore subject to the court's jurisdiction." *Id.* "Failure to obtain personal jurisdiction over the defendant by

statutorily proper service of process is a fundamental defect fatal to the action, regardless of prejudice." *Id.*, ¶13.

¶17 The Orzechs first argue that the circuit court erred by dismissing Ethos/WVRC and two veterinarians for lack of service because they "failed to raise [the] defense of lack of personal jurisdiction in their Answer and Affirmative Defenses" and therefore waived the defense. (Emphasis omitted.) *See* WIS. STAT. § 802.06(2)(a) (defense of lack of jurisdiction or insufficiency of summons or process "may … be made by motion" but "shall be asserted in the responsive pleading."). The Orzechs' contention, however, is belied by the Record. The Record reflects that Ethos/WVRC and the veterinarians raised lack of jurisdiction and failure to obtain proper service in both their answer and their answer to the amended and supplemental complaint. They have not waived the defense.

¶18 The Orzechs next argue the circuit court erred by determining as a factual matter that Ethos and two of the veterinarians had not been properly served. A process server's "uncontradicted certificate of service is adequate proof of service, but … it may be overcome with 'clear and satisfactory proof' to the contrary." *Culver v. Kaza*, 2021 WI App 57, ¶15, 399 Wis. 2d 131, 963 N.W.2d 865. "The [circuit] court has discretion concerning the nature of the proof it may consider when it decides whether [a defendant] was served with the summons and complaint." *Id.*, ¶11 (alteration in original). "We will sustain a discretionary determination if the facts of record and correct legal standards are stated and considered together to achieve a reasoned and reasonable decision." *Id.*

### A. Ethos/WVRC

¶19     In the circuit court, the Orzechs argued they properly served Ethos/WVRC.  In support, they pointed to the affidavit from their process server, Brad Klaus, who averred:

> On September 24th, 2022 at 11:29 AM, I personally served a summons and complaint # 2022CV001366 Waukesha County upon the Wisconsin Veterinary Referral at 360 Bluemound Rd, Waukesha, WI 53188[.]  Kari Severson identified herself as the Medical Director and accepted the paperwork.

¶20     However, before the circuit court, Ethos argued Severson was never served.[3]  In support, Ethos provided two affidavits.  The first was from Severson.  As relevant to this appeal, Severson averred she had never met or seen Klaus, she has never accepted any paperwork from him, and she was never served with a copy of the Orzechs' summons and complaint.  Severson explained her son plays football for Michigan Technological University ("Michigan Tech"), and on September 24, 2022, she was not in Waukesha but in Houghton, Michigan to watch her son play a football game.  Severson attached to her affidavit a copy of Michigan Tech's 2022-2023 football schedule, which reflected a game on September 24 in Houghton, Michigan.  Severson also attached copies of iPhone

---

[3] In the circuit court, Ethos also argued that, alternatively, it should be dismissed from the lawsuit because: (1) WVRC is not a legal entity and the Orzechs failed to timely name Ethos as a party defendant; and (2) even assuming WVRC was properly identified (which it was not), the Orzechs failed to establish that Severson was a person authorized to accept service on behalf of WVRC.  The court agreed with these alternative reasons as to why Ethos should be dismissed from the lawsuit.  However, because we determine that the court did not err by finding Severson was never served, we do not address the Orzechs' arguments on appeal related to whether they timely amended their complaint to include Ethos as a party, or whether Severson was authorized to accept service on behalf of Ethos.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases decided on narrowest possible ground).

photographs taken by herself and others during and after the football game. Two of the photographs depicted Severson with her son in his Michigan Tech football uniform. The photographs included a date, time, and location stamp, indicating they were taken on September 24, 2022, at 1:08 p.m., 3:48 p.m., and 3:54 p.m. at Michigan Tech.

¶21 Ethos also provided the circuit court with an affidavit from Dr. Whitney Witzel. Witzel averred that she is an employee of Ethos' Waukesha location and on September 24, 2022, she was working at the Waukesha location. Witzel averred that Severson was not at work on September 24, 2022.

¶22 Based on this evidence, the circuit court found that Severson was never served on September 24, 2022. Because the Orzechs had no other affidavit establishing that Ethos/WVRC was properly served, it dismissed Ethos/WVRC from the lawsuit.

¶23 On appeal, the Orzechs argue the circuit court erred by determining Severson had not been served based on the evidence before it. They argue the court was required to hold an evidentiary hearing. We disagree. As stated previously, the court "has discretion concerning the nature of the proof it may consider when it decides whether [a defendant] was served with the summons and complaint." *Culver*, 399 Wis. 2d 131, ¶11. Here, the court stated it was persuaded by Severson's detailed affidavit along with the corroborating evidence that was provided, which included the photographs, a football game schedule, and Witzel's affidavit. Further, the Record reflects that the Orzechs asked for and were given additional time to get further documentation from Klaus prior to the scheduled motion hearing; however, the Orzechs ultimately failed to provide any more evidence to the court. Given the circumstances, the court did not

erroneously exercise its discretion by failing to hold an evidentiary hearing or by finding that Severson was not served.

### B. Dr. Molly Hopp

¶24    In the circuit court, the Orzechs argued they properly served Hopp. In support, they again pointed to Klaus's affidavit. Klaus averred:

> On October 19th, 2022 at 5:19 PM, I personally served a summons and complaint #2022CV001366 Waukesha County upon Molly Hopp at the Wisconsin Veterinary Referral at 360 Bluemound Rd, Waukesha, WI 53188[.] Molly Hopp identified herself and accepted the paperwork.

¶25    Hopp, however, asserted she was never served. In her affidavit, she averred that on October 19, 2022 she was working at Ethos' Waukesha location. While she was in the middle of an appointment, the receptionist, Olivia, entered her examination room and said there was someone at the front desk who had papers for her. Hopp told Olivia that she could not immediately come out to the front desk because she was in the middle of an appointment. Hopp stated that when her appointment finished, she went to the front desk. The receptionist handed Hopp a copy of the summons and complaint, and advised Hopp that the person who had been looking for her left the papers for her and was no longer in the building. Hopp averred she has never met or even seen Klaus, she did not see him on October 19, 2022, she never "identif[ied] [her]self" to Klaus, and she did not accept any paperwork from him.

¶26    The circuit court observed the determination of whether Hopp was served was a "closer call." However, the court found persuasive the detail Hopp included in her affidavit compared to Klaus's single paragraph. The court also stated that it did not need to hold an evidentiary hearing because it had already

provided the Orzechs with the opportunity to get additional affidavits from Klaus or others relating to service; however, the Orzechs had not provided any more evidence. The court found that "what tips the scales for me relative to this is that I already concluded that the process server made a fundamental mistake relative to service of Dr. Severson." The court ultimately found Hopp was not served and dismissed her from the lawsuit.

¶27 On appeal, the Orzechs argue the circuit court erred by determining Hopp had not been served without holding an evidentiary hearing. We disagree. The Record reflects that the Orzechs were given additional time to submit further evidence or another affidavit from Klaus regarding service, but they did not because as they advised the court, he would not provide another affidavit. Further, the court's reasoning reflects the court was already concerned with the mistake Klaus made relative to Severson's purported service of process. The court also found Hopp's detailed affidavit more persuasive than Klaus's single paragraph. Given the circumstances, we conclude the court did not erroneously exercise its discretion by failing to hold an evidentiary hearing or by finding that Hopp was not served. *See* ***id.***

### C. Dr. Mike Quigley

¶28 Quigley was never personally served. The Orzechs' affidavit of nonservice states that the process server went to Quigley's last known apartment address three times. The third time the current apartment resident advised that Quigley did not reside there. The Orzechs then published notice of the lawsuit in the Milwaukee Journal Sentinel.

¶29 As relevant to the Orzechs' choice of service methods for Quigley, WIS. STAT. § 801.11(1)(c) provides:

> If with reasonable diligence the defendant cannot be served under par. (a) [personally serving the summons on the defendant] or (b) [left at the defendant's place of abode in the presence of a family member or an adult living with the defendant], service may be made by publication of the summons as a class 3 notice, under [WIS. STAT.] ch. 985, and by mailing. If the defendant's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the defendant, at or immediately prior to the first publication, a copy of the summons and a copy of the complaint. The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence.

¶30 In the circuit court, Quigley argued service by publication was improper because the Orzechs failed to establish they exercised "reasonable diligence" in attempting personal service. Quigley observed that the Orzechs discussed alleged search efforts in their brief but failed to aver or authenticate the allegations or exhibits. Quigley also argued the Orzechs failed to establish that the Milwaukee Journal Sentinel was likely to give notice to Quigley because they knew he no longer lived at the Milwaukee address. *See* WIS. STAT. § 985.02(1) ("[A] legal notice shall be published in a newspaper likely to give notice in the area or to the person affected.").

¶31 Ultimately, the circuit court determined it "c[ould ]not conclude that reasonable diligence has been demonstrated by way of any affidavit or any other means that I may consider as evidence in these proceedings." The court dismissed Quigley from the lawsuit.

¶32 On appeal, the Orzechs argue the circuit court erred by determining the affidavit of nonservice was insufficient to demonstrate that reasonable diligence was made in attempting personal service. They argue that no additional affidavit demonstrating efforts to locate Quigley was required, and he was properly served by publication. We disagree. "Reasonable diligence is a question

12

of what is reasonable under the facts of a particular case." *Culver*, 399 Wis. 2d 131, ¶29. We have previously stated:

> The diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address ... of the person on whom service is sought.

*Id.* (ellipsis in original; citation omitted).

¶33    In this case, the Orzechs' affidavit of nonservice established only that the process server went to Quigley's last known address (an apartment in Milwaukee) three times. On the first two attempts the process server was unable to get into the apartment building. On the third attempt, the process server stated: "Current resident states that defendant no longer lives here. Incorrect address." We conclude this affidavit is insufficient to establish the Orzechs exercised reasonable diligence in attempting to personally serve Quigley such that service by publication was appropriate. The circuit court did not err and properly dismissed Quigley from the lawsuit.

## II.    The dismissal of the fraudulent misrepresentation and fraudulent concealment causes of action

¶34    The Orzechs argue the circuit court erred by dismissing their fraudulent misrepresentation and fraudulent concealment causes of action on the basis that these causes of action were not pled with particularity. *See* WIS. STAT. § 802.03(2). Particularity requires "specification of the time, place, and content of an alleged false misrepresentation." *Friends of Kenwood v. Green*, 2000 WI App 217, ¶14, 239 Wis. 2d 78, 619 N.W.2d 271 (citation omitted). In other words, the "who, what, when, where and how" of the false statements must be pled. *Id.*

13

(citation omitted). Reference to generic entities or the "defendants" or "plaintiffs" broadly does not suffice. *See id.*, ¶¶14-16.

¶35 On appeal, the Orzechs assert they pled their fraudulent misrepresentation and concealment claims with particularity. In support, they simply direct this court to their complaint and assert the complaint establishes the who, what, when, where, and how.

¶36 We disagree. The Orzechs' complaint only vaguely avers that the "defendants" misrepresented information to the Orzechs and concealed they were failing to render proper care for the Orzechs' dog. These allegations do not say which defendant made the representation or what exactly was stated. We agree with the circuit court that the Orzechs' complaint includes "just very general averments," which do not satisfy the particularity pleading requirements. *See id.*, ¶16 (concluding misrepresentation allegations were insufficiently pled "because they fail[ed] to specify the particular individuals who made the representations, and fail[ed] to specify the details of where and when the misrepresentations were made, and who the misrepresentations were made to."). Accordingly, the court properly dismissed these causes of action.

### III. The dismissal of the negligent supervision and fraudulent concealment of veterinary medical records causes of action

¶37 The Orzechs next argue the circuit court erred by granting summary judgment in favor of the veterinarians and dismissing their negligent supervision and fraudulent concealment of veterinary medical records causes of action. These claims were based on the veterinarians' purported violations of WIS. ADMIN.

CODE § VE 1.44 (through Nov. 2024)[4] (as relating to supervision) as well as WIS. STAT. § 89.075 and WIS. ADMIN. CODE §§ VE 1.52 and 1.58 (through Nov. 2024) (as relating to veterinary medical records). In court, the veterinarians argued, in part, that they were entitled to judgment on these causes of action because there was no language within the code or statute that evinced legislative intent to create a private right of action for these purported violations.

¶38 At the motion hearings (one regarding the negligent supervision cause of action and one regarding the fraudulent concealment of veterinary medical records cause of action), the circuit court asked the Orzechs for argument as to how these code provisions and statute created a private right of action under the circumstances. The Orzechs stated they did not know and they did not have anything to refute the assertion that these regulations and statute did not create a private right of action. The court dismissed the causes of action.

¶39 On appeal, the Orzechs assert these regulations and statute create a private right of action. They explain these provisions are designed to protect pet owners, assert the Orzechs were harmed by the veterinarians' violations of these provisions, and contend that, as a result, they should be permitted to bring these causes of action.

¶40 We disagree. "'[A] private right of action is only created when (1) the language or the form of the statute evinces the legislature's intent to create a private right of action, and (2) the statute establishes private civil liability rather

---

[4] At the time the Orzechs' dog passed away, this regulation was found in WIS. ADMIN. CODE § VE 7.02 (through March 2020), https://docs.legis.wisconsin.gov/code/register/2020/771B/insert/ve7.

than merely providing for protection of the public.'" *Farr v. Alternative Living Servs., Inc.*, 2002 WI App 88, ¶14, 253 Wis. 2d 790, 643 N.W.2d 841 (citation omitted).  Here, the Orzechs have not pointed to any language in the challenged regulations or statute that evinces "a clear indication of the legislature's intent" to create a private right of action.  *See Grube v. Daun*, 210 Wis. 2d 681, 689, 563 N.W.2d 523 (1997) ("A determination of whether a statute creates a private right of action is dependent on whether there is a clear indication of the legislature's intent to create such a right.").  That the Orzechs were purportedly harmed by the veterinarians' failure to properly supervise or provide their dog's medical records is not enough to create a private right of action.  We conclude that, given the circumstances, the circuit court did not err by dismissing the Orzechs' negligent supervision and fraudulent concealment of veterinary medical records causes of action.

### IV.    The denial of the motion to allow additional expert testimony

¶41    The Orzechs next argue the circuit court erred by denying their motion to allow additional expert testimony.  In making its determination, the court observed that the Orzechs had retained their second expert and received this expert's report in September 2022.  Yet, the Orzechs only disclosed Alisantosa on their April 2023 witness list.  The court also observed that in September 2023, the Orzechs advised the veterinarians in their sworn interrogatory response that they still did not have another expert.  The veterinarians learned of this second expert in December 2023, when the Orzechs filed their motion to allow additional expert testimony.  The court stated:

> for you to wait then until December [2023] to disclose [the second expert] … is unacceptable.  And therefore as to Interrogatory No. 1 … I am going to conclude that the answer is completed and that the expert [you] intend to call

is Dr. Alisantosa, and I am going to deny the motion to extend the time to identify an additional expert.

¶42 On appeal, the Orzechs argue the circuit court erred by excluding their second expert. They assert that, pursuant to the court's scheduling order, they had until December 15, 2023 to disclose a second expert, and therefore, they timely disclosed their second expert. The Orzechs also assert that the court's decision to prohibit an additional expert based on how they answered their interrogatory was too drastic.

¶43 We disagree. A circuit court has statutory and inherent authority to control its docket through a scheduling order, "including the identification and disclosures of expert witnesses[.]" *260 N. 12th St., LLC v. DOT*, 2011 WI 103, ¶57, 338 Wis. 2d 34, 808 N.W.2d 372 (quoting WIS. STAT. § 802.10(3)(f)). "A party's failure to follow a scheduling order is grounds for sanctions at the circuit court's discretion." *Id.*, ¶58. Such sanctions may include prohibiting a party "from introducing designated matters in evidence[.]" *Id.* (quoting WIS. STAT. § 804.12(2)(a)2.).

¶44 Here, contrary to the Orzechs' assertion, they did not have until December 15, 2023 to name a second expert. Rather, the circuit court's amended scheduling order provided that the Orzechs were required to name their expert(s) by April 10, 2023, the veterinarians needed to name their expert(s) by September 11, 2023, and any rebuttal expert was to be identified by November 8, 2023. The order provided, "Witnesses not timely named and described will be precluded from testifying as witnesses at trial, except for good cause shown." The December 11, 2023 deadline, extended to December 15, 2023, was the deadline to

17

bring a motion under "WIS. STAT. § 901.04[5] to allow (out of the ordinary experts) or to challenge the admission of expert testimony." The Orzechs did not timely name this second expert pursuant to the court's amended scheduling order.

¶45 Additionally, given the Record, the Orzechs did not establish good cause to permit their second expert from testifying. The circuit court observed that the Orzechs had known about this expert for more than one year and had a report from this expert dated September 24, 2022. Nevertheless, the Orzechs advised the veterinarians in their sworn September 2023 interrogatory response that they were "presently searching for an additional expert witness."[6] The Orzechs then did not disclose this witness until they filed their motion in December 2023. We conclude the circuit court did not erroneously exercise its discretion by excluding this expert witness from testifying.

## V. The exclusion of Alisantosa as an expert witness

¶46 The Orzechs next argue the circuit court erred by excluding Alisantosa as an expert witness. A court's decision to admit or exclude expert testimony is governed by WIS. STAT. § 907.02(1). That subsection adopts the federal "reliability" standard developed in *Daubert*. *State v. Giese*, 2014 WI App 92, ¶17, 356 Wis. 2d 796, 854 N.W.2d 687. Under § 907.02(1), there are three "threshold requirements" for the admission of expert testimony:

---

[5] WISCONSIN STAT. § 901.04 is titled, "**Preliminary questions**," and provides, for example, that "[p]reliminary questions concerning the qualification of a person to be a witness, ... or the admissibility of evidence shall be determined by the judge ...." Sec. 901.04(1).

[6] The interrogatory asked, in part: "Identify by name, address, and telephone number every person you expect to call as an expert witness at trial other than Bernadette T. Alisantosa." The Orzechs responded, "We will supplement discovery at a later date since we are presently searching for an additional expert witness."

> the witness must be *qualified* ("a witness qualified as an expert by knowledge, skill, experience, training, or education"); the witness's testimony must be *relevant* ("[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"); and … the witness's testimony must be *reliable* ("if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case").

*State v. Hogan*, 2021 WI App 24, ¶19, 397 Wis. 2d 171, 959 N.W.2d 658 (quoting § 907.02(1); first alteration in original). "We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard." *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.

¶47 In its written decision, the circuit court determined Alisantosa had limited qualifications and her expert opinion was not sufficiently reliable. In support of its determination, the court provided extensive details of Alisantosa's deposition testimony. The court observed that Alisantosa earned her doctor of veterinary medicine degree at a school in Indonesia. Alisantosa was not licensed as a veterinarian in any state because her career focused on biomedical research. Alisantosa last worked in a clinical veterinary setting in Indonesia in the late 1980s/early 1990s. The court observed Alisantosa had never treated various medical conditions from this case in a clinical setting, that her testimony established she was unfamiliar with the Orzechs' dog's medical records, that, although she claimed to be an expert in emergency and critical care veterinary medicine, she needed her report to refresh her recollection about a particular condition and admitted she should have known about this condition without reliance on her report, and that her recommended treatments were based on her professed style rather than any standard of care. The court also observed that there

were numerous self-contradictions in Alisantosa's testimony such as the criteria to look for to recognize a medical condition and recommended treatments.

¶48    Ultimately, the circuit court determined Alisantosa

> was persistently unable to recall the basis for her opinions, nor could she recall the details of the treatment of [Orzechs'] dog with much accuracy.
>
> … She offered very little that demonstrated that putting her on the stand before the jury would be anything more than the speculation, "conjecture dressed up in the guise of expert opinion," or *ipse dixit* testimony that is prohibited by the statutes and case law.
>
> When those problems are coupled with the extremely limited professional qualifications that Dr. Alisantosa has to testify on standards of care for a 21st century American veterinary hospital practitioner, this Court has no choice but to exercise the "gate-keeper" function under the statutory framework.

The court excluded Alisantosa's expert testimony.

¶49    On appeal, the Orzechs argue the circuit court erred by excluding Alisantosa's testimony. We disagree. The Record reflects that the court was concerned with Alisantosa's lack of clinical experience, her self-contradictory testimony, her lack of recall of information—both case specific and medical information in general, and that her standard of care was based on her style of treatment. The court's decision was appropriately based on the facts before it and application of those facts to WIS. STAT. § 907.02(1). We conclude the court properly exercised its discretion by excluding Alisantosa's testimony.

## VI.    The determination that expert testimony was required and the grant of summary judgment

¶50    Finally, the Orzechs argue the circuit court erred by determining that expert testimony was required in order for them to maintain their negligence and

professional malpractice causes of action against the remaining veterinarians. "The requirement of expert testimony is an extraordinary one, and is to [be] applied by the [circuit] court only when unusually complex or esoteric issues are before the jury." *White v. Leeder*, 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989). "Before expert testimony is held to be a prerequisite, it must be found that the matter is not within the realm of ordinary experience and lay comprehension." *Id.*

¶51 Here, the circuit court determined that the Orzechs needed expert testimony to "explain the standard of care expected of a reasonable veterinarian." The court observed that this case

> involves multiple disease diagnoses and complex life-saving or life-extending procedures. One need look no further than the pleadings in the present case to see that there were treatments that were applied that require specialized skills far beyond the knowledge of a lay person. A review of the veterinary records relating to the care of the [Orzechs'] dog demonstrates that a complex course of treatment was implemented to address a number of different veterinary medical concerns. … Further, several of [the Orzechs'] original claims directly challenge whether staff at WVRC had the necessary training, licenses, qualifications, etc., to provide services to their dog. Clearly, the most critical aspects of the care of [the Orzechs'] dog required considerable training and experience.

¶52 On appeal, the Orzechs assert "[t]he malpractice and negligence committed by the [veterinarians] 'speaks for itself' and, thus, does not require expert testimony since it can be easily recognized as such by a reasonable jury." We disagree. As the circuit court observed, the Record reveals this case involves complex and technical knowledge of veterinary medicine, and appropriate standards of care that are not within the common knowledge and ordinary experience of an average juror. The court did not err by determining that expert

testimony was required in order for them to maintain their negligence and professional malpractice causes of action.

¶53 Because expert testimony was required in this case and the Orzechs' expert was properly excluded from testifying, the circuit court properly granted summary judgment on the remaining causes of action in favor of the veterinarians. *See Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 381, 541 N.W.2d 753 (1995) ("The lack of expert testimony in cases which are so complex or technical that a jury would be speculating without the assistance of expert testimony constitutes an insufficiency of proof."); *see also* Wis. Stat. § 802.08(2).

## VII. Remaining appellate arguments

¶54 Finally, the Orzechs argue the circuit court erred by making various declaratory determinations that limited their claimed damages. However, because we concluded the court properly dismissed their lawsuit, we need not determine what damages are available to the Orzechs. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases decided on narrowest possible ground).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.

22